OPINION
{¶ 1} Defendant-appellant, Veniamin Linnik, appeals his murder conviction in the Madison County Court of Common Pleas.
 {¶ 2} Appellant was indicted on two counts of murder for the death of his father, Ivan Linnik. Appellant is a Ukranian citizen with resident alien status in the United States. Appellant's primary language is not English, but he had lived in the United States for more than six years and attended Columbus State for almost a year, telling the police during questioning that "I got on the Dean's List all the time."
 {¶ 3} On December 14, 2003, the London Ohio Police Department received a call from Natalya Linnik, appellant's sister, at 4:11 a.m. seeking medical assistance for her father. When the paramedics arrived, they discovered that Ivan Linnik had been beaten to death earlier that evening. Appellant told paramedics that he and his father had been in a physical confrontation with each other. The London Police Department was called and appellant was taken into custody at approximately 5:15 a.m. The police contacted Marian Hurdzan later that morning and asked her to provide translation services.
 {¶ 4} At 9:00 a.m., Sergeant David Litchfield conducted the interrogation. With the assistance of Ms. Hurdzan, he advised appellant of his constitutional rights under Miranda v. Arizona
(1966), 384 U.S. 436, 86 S.Ct. 1602. Appellant signed a written waiver form and gave his statement in which he described how he and his father were both drinking cognac before the altercation that resulted in the father's death.
 {¶ 5} Appellant's arraignment was held on January 14, 2004. He entered a not guilty by reason of insanity plea, but he later withdrew this plea. He changed his plea to not guilty. On May 11, 2004, appellant moved to suppress his statement to police asserting that he did not knowingly, intelligently, or voluntarily waive his Fifth Amendment rights and that he was not afforded the opportunity to consult with a representative from the Ukrainian Embassy. At the motion to suppress hearing, he also argued that he had not waived his right to counsel. The court overruled the motion in a written decision finding that neither alcohol nor language in any way interfered with appellant's ability to comprehend the nature of his circumstances. The court further found that considering the totality of the circumstances, defendant knowingly, intelligently and voluntarily waived his rights and made an incriminating statement.
 {¶ 6} Additionally, the court found that appellant explicitly waived his right to counsel in writing and did not invoke his right to counsel before or during the interrogation by Sgt. Litchfield.
 {¶ 7} A jury trial was conducted on May 18-20, 2004. Appellant was found guilty on one count of murder and was sentenced to a prison term of 15 years to life. Appellant raises two assignments of error.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY OVERRULING THE DEFENDANT'S MOTION TO SUPPRESS."
 {¶ 10} In the first assignment of error, appellant argues that his confession given to the police should be excluded because he did not knowingly, intelligently, and voluntarily waive his constitutional rights. He also contends that the confession should be excluded because it was obtained in violation of his rights as a foreign national under the Vienna Convention on Consular Relations ("VCCR").
 {¶ 11} A suspect may waive his Miranda rights provided his waiver is knowing, intelligent and voluntary. Edwards v.Arizona (1981), 451 U.S. 477, 483, 101 S.Ct. 1880. The issue of waiver is determined from a totality of the circumstances in each case, including the defendant's background, experience, and conduct. Id. The state is required to prove, by a preponderance of the evidence, that the defendant waived his right to remain silent. Colorado v. Connelly (1986), 479 U.S. 157,107 S.Ct. 515.
 {¶ 12} In this appeal, appellant asserts that he was intoxicated, sleep-deprived, and deficient in his understanding of the English language. However, the written motion to suppress filed by appellant was generic and did not specifically raise any of these issues. At the hearing, appellant's trial counsel only raised the following arguments: appellant was intoxicated, he did not understand his rights, he did not waive his right to counsel, and he was not afforded the opportunity to speak with the Ukrainian Consulate. The evidence presented to the trial court at the hearing consisted of the testimony of Marian Hurdzan, the translator used during the interrogation, and Sgt. David Litchfield of the London Ohio Police Department, who conducted the interrogation. In addition, the court was provided with a transcript of the interrogation.
 {¶ 13} Sgt. Litchfield testified at the motion to suppress hearing that although appellant had been drinking on the night of the murder, the alcohol did not appear to interfere with his ability to understand and respond to questions. Even though the time of appellant's arrest is unclear, the police were called by appellant's sister at 4:11 a.m. Sgt. Litchfield stated that he arrived at approximately 5:14 a.m. and was able to verify that appellant did not consume any alcoholic beverages from 5:15 a.m. through 9:00 a.m. when the interrogation was conducted.
 {¶ 14} Appellant responded to Sgt. Litchfield's questions on a variety of matters in English including where he was born, whether he wore corrective lenses, the fact that he had been fired from a job recently, his marital status, his health status, the extent of his education, whether he had any children, whether he was taking any medication, whether he had been arrested before, and whether he was right-handed or left-handed. In addition, appellant was asked by Sgt. Litchfield whether he read, wrote and comprehended the English language and his answer was "Sure thing." All of this questioning took place before appellant was read his rights under Miranda in English and the rights form and waiver were given to appellant to read at the same time that Sgt. Litchfield read the form to appellant.
 {¶ 15} The specific rights which were read to appellant were "You are at the London, Ohio Police Department. Today's date is December 14, 2003. The time is 9:20 a.m. Before we ask you any questions, you must understand your rights.
 {¶ 16} "You have the right to remain silent. Anything you say can and will be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and have him with you during questioning.
 {¶ 17} "You are suspected of having committed murder. If you decide to answer questions now without a lawyer present, you will still have the right to stop answering any time until you talk to a lawyer. If you do not have the funds to hire an attorney, the appropriate authorities will provide legal counsel to you without cost."
 {¶ 18} The trial court was provided with a copy of the rights form and waiver as state's exhibit 1. After the rights form was read to appellant, Sgt. Litchfield asked Ms. Hurdzman, the translator, to translate the form again into Ukrainian.
 {¶ 19} Sgt. Litchfield testified that after the translation took place, appellant said he understood his rights and Ms. Hurdzman told him she believed that he understood what his rights were. Appellant denied that the alcohol impaired his abilities or understanding. He expressed a desire to discuss with the officer what happened. Appellant then signed the rights and waiver form which read as follows: "I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or force of any kind has been made against me."
 {¶ 20} The interrogation proceeded in English with appellant receiving little assistance from Ms. Hurdzan. At the conclusion of his statement and questions, the following exchange occurred:
 {¶ 21} "HURDZAN: I ASKED IF HE UNDERSTOOD ALL IT [sic] AND HE UNDERSTANDS.
 {¶ 22} "LITCHFIELD: HE SPEAKS BETTER THAN I THOUGHT HE WOULD.
 {¶ 23} "HURDZAN: YES, HE SPEAKS —
 {¶ 24} "LITCHFIELD: SPEAKS ENGLISH BETTER THAN I THOUGHT.
 {¶ 25} "LINNIK: I GOT ON THE DEAN'S LIST ALL THE TIME."
 {¶ 26} At the motion to suppress hearing, the trial court listened to testimony by Ms. Hurdzan and Sgt. Litchfield and reviewed the interrogation transcript. The trial court overruled appellant's motion and found that considering the totality of the circumstances, appellant knowingly, intelligently, and voluntarily waives his rights and made an incriminating statement.
 {¶ 27} "At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." State v. Mills (1992), 62 Ohio St.3d 357, 366; State v.Jackson, 107 Ohio St.3d 300, 2006-Ohio-1, ¶ 83.
 {¶ 28} After reviewing the evidence before the trial court, specifically the interrogation transcript, the transcript of the motion to suppress hearing and the exhibits entered into evidence at that hearing, we find that the trial court's evaluation of evidence and the credibility of the witnesses is supported by the record. Under the totality of the circumstances, appellant knowingly, intelligently and voluntarily waived his Miranda
rights when he made his confession. There was no indication that alcohol, sleep-deprivation, which was not raised to the trial court, nor English language proficiency affected his understanding of the nature of his circumstances or the rights that he chose to forego.
 {¶ 29} Appellant claims that right to counsel was not waived and was invoked. During the interrogation, Ms. Hurdzan informed appellant that if he could not afford an attorney, that one would be provided for him. Appellant responded, "I can't — I can't afford it." The trial court determined that this statement was not an unequivocal statement which could be reasonably construed as a desire for the assistance of counsel. In State v. Jackson,
107 Ohio St.3d at ¶ 93, the Ohio Supreme Court held: "[u]nder the Fifth Amendment, an accused must clearly invoke his constitutional right to counsel in order to raise a claim of deprivation of counsel. `[T]he suspect must unambiguously request counsel. * * * [H]e must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, Edwards v. Arizona does not require that the officer stop questioning the subject.' Davis v. United States
(1994), 512 U.S. 452, 459, 114 S.Ct. 2350 * * *." (Internal citations omitted.)
 {¶ 30} The Jackson court went on to say, "[i]n State v.Henness (1997), 79 Ohio St.3d 53, 62-63 * * *, we held that `I think I need a lawyer' is not an unequivocal assertion of the right to counsel. In State v. Brown, 100 Ohio St.3d 51,2003-Ohio-5059, * * *, ¶ 19, we held that `don't I supposed to have a lawyer present' was `at best ambiguous.' Other courts have found similar remarks to be ambiguous and thus not invoking the constitutional right to counsel. See, e.g., Mueller v. Angelone
(C.A.4, 1999), 181 F.3d 557, 573-574 (defendant's question to police, `do you think I need an attorney here' answered by headshaking, a shrug, and the statement `You're just talking to us,' was not an unequivocal request); Dormire v. Wilkinson
(C.A.8, 2001), 249 F.3d 801 ('Could I call my lawyer?' followed by police response of `yes' did not invoke the right to counsel);United States v. Zamora (C.A.10, 2000), 222 F.3d 756, 766 (`I might want to talk to an attorney' was not 'an unequivocal request for counsel')." Jackson, 107 Ohio St.3d at ¶ 94.
 {¶ 31} Pursuant to the holding in State v. Jackson, this court finds that the statement "I can't — I can't afford it" with no further explanation from appellant did not amount to a clear, unambiguous, or unequivocal invocation of the right to counsel, and the trial court did not err when it overruled motion to suppress on that basis.
 {¶ 32} We now address appellant's argument that his right to consular notification under Article 36 of the VCCR was violated.[1] The trial court overruled this aspect of appellant's motion to suppress as untimely made.
 {¶ 33} Crim.R. 12 requires that a motion to suppress evidence must be raised before trial. The rule provides that "[a]ll pretrial motions * * * shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier." Crim.R. 12(D). Appellant's motion to suppress was filed 117 days after arraignment and seven days before trial.
 {¶ 34} The decision to grant an untimely filed motion to suppress is a matter within the court's discretion. State v.Karns (1992), 80 Ohio App.3d 199, 204. Thus an appellate court will not reverse a trial court's decision in such matters absent an abuse of discretion. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 35} We find that the trial court did not abuse its discretion when it overruled appellant's motion to suppress. The trial court stated appellant's out of rule motion included no precedent, state or federal, to support his position.[2]
Appellant moved to suppress evidence only two days before the hearing and seven days before trial. The court explained there was "inadequate time to do exhaustive research in absence of precedent." The court's attitude was not unreasonable, arbitrary, or unconscionable when it overruled appellant's motion.
 {¶ 36} The Ohio Supreme Court recently reviewed the abuse of discretion standard in State v. Hancock, 108 Ohio St.3d 57,2006-Ohio-160, ¶ 130, and held again "`[t]he term "abuse of discretion" * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable.' State v. Adams
(1980), 62 Ohio St.2d 15, 157, * * * citing Steiner v. Custer
(1940), 137 Ohio St. 448, * * *. `Abuse of discretion' means `"a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." 1 Bouv. Law Dict., Rawle's Third Revision, p. 94. * * * The term has been defined as "a view or action `that no conscientious judge, acting intelligently, could honestly have taken.'"' [State ex rel. Wilms v. Blake
(1945), 144 Ohio St. 619, 624], quoting Long v. George (1937),296 Mass. 574, 579, quoting Davis v. Boston Elevated Ry. Co.
(1920), 235 Mass. 482, 502. Accord State ex rel. Shafer v. OhioTurnpike Comm. (1953), 159 Ohio St. 581, 591 * * *." The trial judge's action in overruling appellant's motion cannot be described in the above terms.
 {¶ 37} Even if appellant's motion had been timely, this court and others have found that the exclusion of incriminating statements is not the appropriate remedy for an alleged violation of the consular notification right under the VCCR.[3] This court held in State v. Rivera-Carrillo, Butler App. No. CA2001-03-054, 2002-Ohio-1013, that "there is no right in a criminal prosecution to have evidence excluded due to a violation of Article 36 of the Vienna Convention on Consular Relations (VCCR) which states that an individual in custody or detention has the right to communicate with the respective consular or offices." Exclusion of evidence is only appropriate for a statutory violation if the statute, or treaty in this case, provides the express exclusion remedy. See, also, State v.Tuck, 146 Ohio App.3d 505, 2001-Ohio-7017, ¶ 13-16; State v.Mendoza, Marion App. No. 9-01-02, 2001-Ohio-2178.
 {¶ 38} Accordingly, the first assignment of error is overruled.
 {¶ 39} Assignment of Error No. 2:
 {¶ 40} "VIOLATION OF THE DEFENDANT'S RIGHT TO CONSULAR NOTIFICATION UNDER THE VIENNA CONVENTION ON CONSULAR RELATIONS IS COMMENSURATE WITH PLAIN ERROR, THEREBY WARRANTING REVERSAL AND A NEW TRIAL."
 {¶ 41} In the second assignment of error, appellant argues that he is entitled to a new trial as an alternative to exclusion of his statement. He maintains that the failure to be advised of his consular notification rights is analogous to plain error. However, appellant argues that the failure constitutes structural error which is not analogous to plain error. Structural error is analyzed under a different standard.
 {¶ 42} Crim.R. 52(B) empowers appellate courts to determine whether there was plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). For a court to find plain error, first there must be an error. State v. Hill,92 Ohio St.3d 191, 200, 2001-Ohio-141. Second, the error must be plain or "an `obvious' defect in the trial proceedings." Statev. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68. Third, the error must have affected the defendant's substantial rights. In other words, the trial court's error must have affected the outcome of the proceeding. Id.
 {¶ 43} In contrast, a structural error is a constitutional defect that affects the framework within which the trial proceeds rather than simply being an error in the trial process itself.State v. Perry, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 17. Structural error gives rise to a conclusive presumption of prejudice as a matter of law and thus requires automatic reversal. State v. Fisher, 99 Ohio St.3d 127, 2003-Ohio-2761, ¶9-10. Unlike plain error which requires a showing of prejudice or an affected outcome, "structural error mandates a finding of `per se prejudice.'" (Emphasis in original.) Id. at ¶ 9.
 {¶ 44} Appellant contends that he is entitled to a new trial because of the alleged structural error. He argues that every aspect of the trial was affected because he was not informed that he had a right to contact the Ukrainian Embassy. He cites no binding authority or precedent for the structural error argument. Appellant points to Justice Lundberg Stratton's lone dissent inState v. Issa, 93 Ohio St.3d 49, 2001-Ohio-1290, for support of this position.[4]
 {¶ 45} Appellant's argument is without merit. For reasons identical to the inapplicability of the exclusionary rule in appellant's case, namely that any alleged violation of VCCR rights is not a constitutional violation, appellant's structural error argument must fail. A treaty has been deemed to be the substantial equivalent of a federal statute. Whitney v.Robertson (1888), 124 U.S. 190, 194, 8 S.Ct. 456. Rights under a treaty, like rights under a federal statute, are not the equivalent of constitutional rights. Murphy v. Netherland
(C.A.4, 1997), 116 F.3d 97, 100; see, also, State v. Issa,98 Ohio St.3d at 75, J. Cook, concurring. A state does not violate a constitutional right merely by violating a federal statute. Similarly, a state does not violate a constitutional right merely by violating a treaty. Murphy at 100.
 {¶ 46} Any violation of the VCCR should be treated as a violation of a federal statute. The violation of a statute, however, does not necessitate the finding of structural error because appellant's rights under the treaty are not constitutional in dimension. The structural error doctrine is inapplicable. Accordingly, the second assignment of error is overruled.
 {¶ 47} Judgment affirmed.
Young and Bressler, JJ., concur.
[1] {¶ a.} Article 36 of the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, provides:
{¶ b.} 1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:
{¶ c.} (a) consular officers shall be free to communicate with nationals of the sending State and to have access to them. Nationals of the sending State shall have the same freedom with respect to communication with and access to consular officers of the sending State;
{¶ d.} (b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph;
{¶ e.} (c) consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for this legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.
{¶ f.} 2. The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended.
[2] Appellant's motion to suppress stated the following: "Any statements made by the Defendant should further be suppressed for the reason that said Defendant, not being a citizen of the United States, was not afforded any consultation with authorities of his home nation as required by law."
[3] In State v. Issa, the Ohio Supreme Court stated that it is arguable whether Article 36 of the VCCR even creates individually enforceable rights. State v. Issa,93 Ohio St.3d 49, 55, 2001-Ohio-1290. While not essential to the Issa
decision itself, the court doubted whether suppression was the appropriate remedy for the reasons articulated above. Id. at n. 2.
[4] State v. Issa is distinguishable from the case at bar because appellant raised the consular notification issue in the court below. In Issa, the defendant argued that the trial court erred when it admitted a post-arrest statement and testimony regarding the statement despite the fact that he was not advised of his right to consular notification under Article 36 of the VCCR. The court, noting that the defendant did not raise the issue before the trial court, analyzed his claim under a plain error standard and found that the defendant was not prejudiced by the failure to notify him of the consular notification right.Issa, 93 Ohio St.3d at 56.