[Cite as *State v. Vunda*, 2014-Ohio-3449.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NOS. CA2012-07-130 |
| Plaintiff-Appellee, | : | CA2013-07-113 |
| | : | O P I N I O N |
| - vs - | | 8/11/2014 |
| | : | |
| PAUL D. VUNDA, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2011-12-2144

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Paul D. Vunda, #A666624, Lebanon Correctional Institution, P.O. Box 56, Lebanon, Ohio 45036, defendant-appellant, pro se

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Paul Vunda, appeals from his conviction in the Butler County Court of Common Pleas for six counts of rape, three counts of unlawful sexual contact with a minor, and two counts of contributing to the unruliness or delinquency of a child. For the reasons detailed below, we affirm the decision of the trial court.

{¶ 2} Appellant immigrated to the United States from the Democratic Republic of Congo in 2000 with the financial support of his sister. Upon arrival, appellant resided with his

sister and her family at their house in West Chester, Ohio located in Butler County. The victim, A.P., is appellant's niece who resided in the same West Chester house with her family.

{¶ 3} The sexual abuse at the center of this case began in 2000 when A.P. was six years old. According to A.P.'s recollection, the first instance of sexual abuse occurred when she was left home alone with appellant. A.P. testified that she had been in her family computer room, playing on the computer, when appellant came up behind her and began groping her breasts both on top and under her clothing. After the initial encounter, A.P. testified that the sexual abuse escalated. A.P. stated that appellant would feel her vagina both on top and under her clothing and would also insert his fingers into her vagina. When A.P. turned seven years old, the sexual abuse escalated to sexual intercourse.

{¶ 4} A.P. elaborated that each instance of sexual abuse occurred when appellant was left alone with her at the West Chester house. A.P. further testified that this abuse occurred routinely over a period of 11 years. A.P. stated that she was often left alone with appellant because he was responsible for waking her up in the morning, taking her to the bus stop for school, and transporting her to basketball practice in the evenings. Over this 11-year period, A.P. clearly indicated that appellant had continuously sexually abused A.P. through numerous acts of vaginal penetration, fellatio, cunnilingus, and digital penetration from 2000-2011.

{¶ 5} The sexual abuse ended in 2011 when A.P. was 17 years old after she placed a hidden camera in the basement and captured footage of appellant digitally penetrating her vagina and then engaging in vaginal intercourse. A.P. then showed the video to her mother.

{¶ 6} After seeing the video, A.P.'s mother confronted appellant who immediately fell to his knees, began sobbing, and apologized for his actions. In addition, appellant offered to return to the Congo as punishment for the sexual abuse and stated "[f]orgive me, forgive me.

I'm willing to go to the Congo." Instead, A.P.'s mother alerted authorities who began an investigation.

{¶ 7} Appellant was subsequently brought to the police station and questioned by Detective Mize of the West Chester Police Department. After being advised of his rights, appellant admitted to sexually abusing A.P. and acknowledged that he had been doing so since A.P. was very young. Appellant further elaborated on his admission by acknowledging that he engaged in numerous acts of vaginal penetration, fellatio, cunnilingus, and digital penetration with A.P. over the years. When asked how many times that he had engaged in each type of conduct, appellant stated that he could not recall, but admitted that he had touched A.P. in her private areas more than 50 times, engaged in cunnilingus or fellatio at least ten times, and had sexual intercourse with A.P. at least ten times. Furthermore, appellant admitted that he was the person captured on the hidden camera engaged in sexual intercourse with A.P.

{¶ 8} Appellant was subsequently indicted on seven counts of rape in violation of R.C. 2907.02, three counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04, and two counts of contributing to the unruliness or delinquency of a child in violation of R.C. 2919.24.

{¶ 9} Prior to trial, appellant moved to suppress all incriminating statements made to Detective Mize during the investigation based on an alleged *Miranda* violation. The trial court held a hearing on the motion, which was subsequently denied.

{¶ 10} The matter proceeded to a jury trial where appellant was found guilty of six counts of rape, three counts of unlawful sexual conduct with a minor, and two counts of contributing to the unruliness or delinquency of a child. The jury also made an additional finding that A.P. was under the age of ten years old on the fourth count of rape, involving the instances of sexual abuse occurring in 2003. Appellant was found not guilty of one count of

rape for the allegations of sexual abuse occurring in 2000. The trial court imposed a minimum 14-year prison term on appellant. Because of the additional finding made by the jury on count four involving the 2003 rape, appellant is serving a term of life imprisonment with parole eligibility after ten years on that count. Appellant now appeals his convictions, pro se, raising eight assignments of error for review. For ease of discussion, we will address appellant's assignments of error out of order.

{¶ 11} Assignment of Error No. 1:

{¶ 12} DURING INCOMMUNICADO INTERROGATION IN POLICE DOMINATED ATMOSPHERE, WITHOUT FULL WARNING OF CONSTITUTIONAL RIGHTS, WERE NOT UNDERSTANDABLE TO A FRENCH SPEAKING FOREIGNER. THIS ACTION VIOLATED THE FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION [sic].

{¶ 13} In his first assignment of error, appellant argues the trial court erred in denying his motion to suppress the incriminating statements made to Detective Mize during the police interrogation. Appellant first argues that Detective Mize never advised him of his *Miranda* rights. However, appellant alternatively argues that, even if Detective Mize advised him of his *Miranda* rights, his waiver of those rights was ineffective by virtue of his status as a foreigner and as a native French speaker. We find no merit to this argument.

{¶ 14} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12. "When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility." *State v. Harsh*, 12th Dist. Madison No. CA2013-07-025, 2014-Ohio-251, ¶ 9; *State v. Linnik*, 12th Dist. Madison No. CA2004-06-015, 2006-Ohio-880, ¶ 27. Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v.*

*Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038. However, an appellate court "independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12; *Harsh* at ¶ 10.

{¶ 15} "When a suspect is questioned in a custodial setting, the Fifth Amendment requires that he receive *Miranda* warnings to protect against compelled self-incrimination." *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, ¶ 34. "A suspect may then knowingly and intelligently waive these rights and agree to make a statement." *Id.* If a defendant later challenges a confession as involuntary, the state must prove a knowing, intelligent, and voluntary waiver by a preponderance of evidence. *Id.* To determine whether a valid waiver occurred, we "consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *Id.* at ¶ 35, quoting *State v. Edwards*, 49 Ohio St.2d 31 (1976), paragraph two of the syllabus.

{¶ 16} The trial court held a hearing on appellant's motion to suppress the statements made to Detective Mize. After hearing the evidence presented, the trial court overruled appellant's motion. In pertinent part, the trial court found:

> The Court will find the defendant freely and voluntarily gave his statement, that he was properly Mirandized, he was given all the warnings as set forth in State's Exhibit 1.[1] It's clear from the tape that he understood the English language. He appeared in this tape to be relaxed, willing to answer the questions. Does not appear that there were promises or inducements inappropriately made to this defendant. Quite frankly, there was - - the Court did not observe or understand any inducements being made to this defendant.
>
> The defendant was advised of his right to remain silent, to stop the

---

1. The state's exhibit one is a written copy of the *Miranda* warnings provided to appellant prior to the interrogation by Detective Mize.

questioning. Was advised regarding his right to an attorney. He did not exercise any of those rights. He was not deprived of any necessities. The interview process, the interview itself was not excessively long. In fact, we all sat here probably for more than a half an hour or hour, longer than this, than the interview itself here in the courtroom and none of us needed or asked for a break. The court didn't observe that there was any evidence of abuse, physical or otherwise.

Now, it's not completely clear to this Court whether the defendant was able to read and understand the English language, but it is clear from the exchange that the defendant understood that by signing the card, that he was agreeing and acknowledging that Detective Mize had read to him his Miranda rights. The Court will find that he was properly Mirandized.

{¶ 17} Based on our review of the record, we find the trial court properly denied appellant's motion to suppress. The record reflects that Detective Mize read appellant his *Miranda* rights prior to any questioning and appellant voluntarily waived those rights. The video evidence clearly establishes that Detective Mize orally advised appellant of his rights on multiple occasions and appellant understood his rights. Detective Mize also paraphrased those rights to make it clear that appellant had no obligation to consent to any interview with police. In addition, the record reflects that appellant was provided with a written notice of his *Miranda* rights and appellant voluntarily signed his name to that document, which provides "I [Paul Vunda] have been advised of all of my rights as contained on this card and I understand all of them and I wish to talk to you without having a lawyer present." In conclusion, the record clearly establishes that appellant was repeatedly advised of his *Miranda* rights, but nevertheless chose to continue with the interview.

{¶ 18} Although appellant claims that he did not understand the English language and therefore was not able to knowingly, intelligently, and voluntarily waive his *Miranda* rights, we find those arguments are contrary to the facts of the case. Appellant's videotaped interview with Detective Mize clearly indicates that appellant understood the English language and was capable of understanding his rights. Appellant had been living in the United States for more

than a decade and communicated with Detective Mize in English. Although Detective Mize testified that appellant had an accent, he also stated that appellant did not appear to have any difficulty understanding or speaking the English language. Appellant did not request that the interview be conducted in French or ask for an interpreter. Throughout the entirety of the interview, appellant appeared relaxed and willing to answer the interrogating officer's questions. Appellant's comprehension of the language and subject matter of the interview was evident based on the fact that he provided relevant and appropriate responses to Detective Mize's questions. In addition, appellant was very clear in asking Detective Mize to clarify questions and was not hesitant to correct the detective when the detective misunderstood a response. In sum, the trial court correctly found that appellant had voluntarily waived his *Miranda* rights. Accordingly, the trial court did not err in denying appellant's motion to suppress. Appellant's first assignment of error is overruled.

{¶ 19} Assignment of Error No. 5:

{¶ 20} THE DEFENDANT HAS ESTABLISH A PRIMAFACIA SHOWING OF DISCRIMINATIVE INDENYING JURORS OF HIS PEERS AND NOT TO BE PREJUDICED BECAUSE OF BEING AFRICAN, AND FROM A DIFFERANT COUNTRY, THIS VIOLATED THE EQUAL PROTECTION CLAUSE U.S.C.A. CONST. AMEND. 14 [sic].

{¶ 21} Appellant's fifth assignment error of states that "there was a white judge, all white jurors except one juror this would be 11 to one, and two white woman prosecutors, and his appointed counsel was also white." Based on those observations, appellant argues that there was "purposeful racial discrimination in the selection of the venire" and maintains that his conviction must be overturned. Appellant's argument is without merit.

{¶ 22} Pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant has the right to have a jury chosen from a fair cross section of the community. *State v. Puente*, 69 Ohio St.2d 136, 138 (1982). In order to

comply with the "fair cross section" requirement, a jury must be selected without the systematic or intentional exclusion of any cognizable group. *State v. Wood*, 12th Dist. Preble No. CA2005-11-018, 2006-Ohio-3781, ¶ 27. In order to establish a violation of the fair cross section requirement, a criminal defendant must demonstrate three things: "(1) that the group alleged to be excluded is a distinctive group in the community, (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) the under-representation is due to systematic exclusion of the group in the jury selection process." *State v. Clay*, 2d Dist. Miami No. 08CA33, 2009-Ohio-5608, ¶ 21.

{¶ 23} In the present case, appellant has failed to support his assertion of racial discrimination. First, appellant has failed to produce or point to any evidence in the record that any distinctive group in the community was intentionally excluded from the jury venire. Appellant's sole argument to support his claim of racial discrimination is the bare assertion contained in his appellate brief that "members of his race have been impermissibly excluded from the venire and may make out a prima facie case of purposeful discrimin[ation]." Furthermore, as the state correctly points out in its brief, appellant failed to provide a transcript of the voir dire process and therefore there is nothing for this court to review.

{¶ 24} As this court has repeatedly explained, "[s]ince the appealing party bears the burden of showing error in the underlying proceeding by reference to matters in the record, the appellant has a duty to provide a transcript for appellate review." *State v. Williams*, 12th Dist. Clermont No. CA2012-Ohio-08-060, 2013-Ohio-1387, ¶ 18; *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980); see App. R. 9(B); see also App. R. 16(A)(7). "Where portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus has no choice but to presume the regularity or validity of the lower court's proceedings and affirm." *Knapp* at 199;

*Williams* at ¶ 18; *State v. Gregory*, 12th Dist. Clinton No. CA2006-05-016, 2006-Ohio-7037, ¶ 3.

{¶ 25} A review of the record in this case reveals that appellant did not submit a transcript of the voir dire process, which was necessary for this assignment of error. Without a transcript, we cannot determine the validity of any of the assertions that appellant made in his brief and we must presume the regularity of the proceedings. As such, we find appellant has failed to support his assertion of racial discrimination and therefore overrule his fifth assignment of error.

{¶ 26} Assignment of Error No. 4:

{¶ 27} THE COURT ERRED WHEN PROSECUTION DID NOT ESTABLISHED VENUE AS TO WHERE THE ALLEGED RAPES OCCURED, THERE WAS NOT A PRIMA FACIASHOWING AS TO CREATE PROOF BEYOND REASONABLE DOUBT, THE CRIME OCCURED IN THE CONVICTING COUNTY [sic].

{¶ 28} Appellant's fourth assignment of error alleges the state failed to prove that Butler County was the appropriate venue for this action. We disagree.

{¶ 29} Venue is not a material element of the offense, yet it is a fact that must be proved beyond a reasonable doubt, unless it is waived by the defendant. *State v. Smith*, 12th Dist. Warren Nos. CA2012-02-017, CA2012-02-018, 2012-Ohio-4644, ¶ 26, citing *State v. Headley*, 6 Ohio St.3d 475, 477 (1983). Pursuant to R.C. 2901.12(A), venue lies in any jurisdiction in which the offense or any element of the offense was committed. "[I]t is not essential that the venue of the crime be proved in express terms, provided it be established by all the facts and circumstances, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the affidavit." *State v. Birt*, 12th Dist. Butler No. CA2012-02-031, 2013-Ohio-1379, ¶ 27.

{¶ 30} A review of the record reveals that the state presented clear and unrefuted

testimony to demonstrate that venue was proper in Butler County. The victim in this case, A.P., testified that between the years of 2000 and 2011, appellant sexually abused her consistently and repeatedly. A.P. testified that she had lived in Butler County her entire life and each instance of sexual abuse occurred at her house in West Chester. A.P.'s mother corroborated A.P.'s testimony and confirmed that A.P. lived in Butler County in their shared residence and appellant had previously lived in that residence. Contrary to appellant's arguments, the record clearly establishes that the state established venue. Accordingly, appellant's fourth assignment of error is overruled.

{¶ 31} Assignment of Error No. 8:

{¶ 32} THE CONSTITUTIONAL REMEDY REQUIRED TO THE STATE TO CORRECT REMEDY OF PERJURED TESTIMONY AND THE FINAL REMEDY THAT MUST BE PRESENTED ON THE TRUTH OF ALL TESTIMONY'S TO CREATE A FAIR TRIAL FOR THE DEFENDANT WHICH THIS DENILE OF A CORRECTIVE REMEDY VIOLATED THE REQUAL PROTECTION AND DUE PROCESS OF THE LAW, UNDER THE (14TH) AMEND [sic].

{¶ 33} In his eighth assignment of error, appellant argues that his conviction was based on inconsistent and perjured testimony and maintains that his conviction must be reversed. In so doing, appellant alleges that he only had sexual contact with A.P. one time in 2011 when the victim was 17 years old, which, coincidentally, is the time that A.P. captured video evidence of appellant engaging in sexual intercourse with her. As such, we will construe appellant's eighth assignment of error as a challenge to the manifest weight of the evidence. However, because appellant's convictions are based on the manifest weight of the evidence, we find appellant's arguments are without merit.

{¶ 34} A manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other."

*State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 34; *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 78. In determining whether the conviction is against the manifest weight of the evidence, an appellate court "must weigh the evidence and all reasonable inferences from it, consider the credibility of the witnesses and determine whether in resolving conflicts, the [fact finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Coldiron*, 12th Dist. Clermont Nos. CA2003-09-078, CA2003-09-079, 2004-Ohio-5651, ¶ 24. "This discretionary power should be exercised only in the exceptional case where the evidence weighs heavily against conviction." *Id.*; *Gray* at ¶ 78.

{¶ 35} We begin by noting that this case involves allegations of sexual abuse from 2000 until 2011, when the victim was between the ages of six and 17 years old. Because of the continuing nature of the sexual abuse, the state did not set forth specific dates for each offense in the indictment, but instead charged appellant with one criminal offense for each year that the abuse continued.

{¶ 36} As we have previously noted, "[a] precise time and date of an alleged offense are not ordinarily essential elements." *State v. Blankenburg*, 12th Dist. Butler No. CA2010-03-063, 2012-Ohio-1289, ¶ 43, citing *State v. Sellards*, 17 Ohio St.3d 169, 171 (1985). In sexual abuse cases involving children, it may be impossible to provide a specific date. "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. An allowance for reasonableness and inexactitude must be made for such cases." *State v. Birt*, 12th Dist. Butler No. CA2012-02-031, 2013-Ohio-1379, ¶ 32, quoting *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 12.

{¶ 37} In this case, appellant was charged with three different crimes: (1) seven counts of rape when A.P. was between the ages of six and 12; (2) three counts of unlawful

sexual conduct with a minor when A.P. was between the ages 13 and 15 years old; and (3) two counts of contributing to the unruliness or delinquency of a child when A.P. was 16 and 17 years old.

{¶ 38} Rape is defined under R.C. 2907.02 and provides "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age[.]"

{¶ 39} The crime of unlawful sexual conduct with a minor is defined under R.C. 2907.04, and provides "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard."

{¶ 40} Sexual conduct, as defined in both R.C. 2907.02 and R.C. 2907.04, includes, inter alia, vaginal intercourse, fellatio, cunnilingus, and digital penetration of the vagina. R.C. 2901.01(A).

{¶ 41} Finally, appellant was charged with two counts of contributing to the unruliness or delinquency of a child in violation of R.C. 2919.24, which provides "[n]o person * * * shall * * * [a]id, abet, induce, cause, encourage, or contribute to a child or a ward of the juvenile court becoming an unruly child." An "unruly child" includes any child "[w]ho so deports himself as to injure or endanger the health or morals of himself or others." *State v. Johnston*, 12th Dist. Warren No. CA99-07-079, 2000 WL 1875820, *3 (Dec. 26, 2000), citing R.C. 2151.022. "As a matter of law, a child is unruly who engages in sexual activity with an adult, 'as it is inherently injurious to the morals of the child or others.'" *State v. Chewning,* 12th Dist. Clermont No. CA2004-01-002, 2004-Ohio-6661, ¶ 41 (reversed in part on other grounds), citing *State v. Lukens*, 66 Ohio App.3d 794, 808 (10th Dist.1990).

{¶ 42} In the present case, A.P. testified that appellant began sexually abusing her in

2000 when she was six years old. A.P. acknowledged that appellant had sexually abused her repeatedly. Specifically, A.P. testified that appellant had engaged in separate acts of fellatio, cunnilingus, vaginal intercourse, and digital penetration of her vagina for each year beginning in 2000 and ending in 2011. A.P. stated that each instance of sexual conduct occurred when she was alone with appellant. This testimony was corroborated by A.P.'s mother who testified that appellant routinely helped A.P. get ready for school in the morning and had a key to the residence.

{¶ 43} A.P.'s testimony was further corroborated by appellant's own admissions made to the police during the police interrogation. In his interview with Detective Mize, appellant admitted to touching A.P.'s private areas, including her breasts, vaginal area, and buttocks many times over the years. In addition, appellant admitted to Detective Mize that he had: (1) touched A.P. in her private areas more than 50 times; (2) engaged in cunnilingus or fellatio at least ten times; and (3) had sexual intercourse with A.P. at least ten times.

{¶ 44} Finally, neither party disputes A.P.'s age or date of birth. Therefore, it is undisputed that A.P. was under the age of consent at all times relevant to the instances of sexual abuse and under the age of 13 and 16, respectively, for each count of rape and unlawful sexual conduct with a minor.

{¶ 45} In light of the evidence presented, the jury did not clearly lose its way in concluding that appellant was guilty of six counts of rape, three counts of unlawful sexual conduct with a minor, and two counts of contributing to the unruliness or delinquency of a child. Although appellant denies that he had any sexual contact with A.P., except for the 2011 incident caught on videotape, the jury, as trier of fact, was in the best position to weigh the credibility of the witnesses. The jury simply did not believe that appellant's position was credible. Appellant's convictions are not against the manifest weight of the evidence. Accordingly, we overrule appellant's eighth assignment of error.

{¶ 46} Assignment of Error No. 3:

{¶ 47} WHEN THE JURY FOUND MR. VUNDA NOT GUILTY OF COUNT ONE THIS CREATED PLAIN ERROR AND A JURISDICTIONAL DEFECT IN THIS PROCEEDINGS [sic].

{¶ 48} In his third assignment of error, appellant argues that his conviction should be overturned because the jury entered a finding of "not guilty" on one count of rape. Therefore, appellant maintains that the irregularity in the verdict warrants reversal. We disagree.

{¶ 49} It is well-established that "inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Brown*, 12 Ohio St.3d 147, 149 (1984). "Each count in an indictment charges a distinct offense and is independent of all other counts; a jury's decision as to one count is independent of and unaffected by the jury's finding on another count." *State v. Davis*, 12th Dist. Butler No. CA2010-06-143, 2011-Ohio-2207, ¶ 37.

{¶ 50} As noted above, the jury's verdict was supported by the manifest weight of the evidence. Although the jury found appellant not guilty on one count of rape, that finding does not affect the validity of appellant's other convictions. Simply, the jury could reasonably believe that appellant committed the separate instances of sexual abuse between the years of 2001-2011, yet fail to find, beyond a reasonable doubt, that appellant committed one count of rape in 2000. Appellant's third assignment of error is without merit.

{¶ 51} Assignment of Error No. 2:

{¶ 52} THE COURT VIOLATED THE SIXTH AMENDMENT WHEN THE COURT APPOINTED A ATTORNEY THAT NEVER BEEN TO TRIAL OR HAD NEVER BEEN EFFECTIVE AS TO HIS OWN CLIENT THIS ATTORNEY WAS A DEAD GIVE A WAY TO A WIN TO THE PROSECUTION AS THIS COURT KNEW FOR A FACT THIS ATTORNEY NEVER HAS BEEN TO TRIAL THIS VIOLATED THE FOURTEENTH AMENDMENT AND

VIOLATED THE DEFENDANTS RIGHTS TO A FAIR TRIAL, UNDER THE DUE PROCESS CLAUSEAND EQUAL PROTECTION RIGHTS [sic].

{¶ 53} In his second assignment of error, appellant argues that he received ineffective assistance of counsel because: (1) this was his trial counsel's first time going to trial and therefore, the result was a "dead bang winner" for the state; (2) his trial counsel failed to fully investigate the time frame of the allegations; (3) his trial counsel never questioned any witnesses; (4) his trial counsel should have requested a mistrial because Detective Mize was present during the proceedings; (5) his trial counsel "should have brought up the Corpus Delicti [sic]." Appellant's argument is meritless.

{¶ 54} To prevail on an ineffective assistance of counsel claim, an appellant must establish: (1) that his trial counsel's performance was deficient; and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984); *State v. Vore*, 12th Dist. Warren Nos. CA2012-06-049, CA2012-10-106, 2013-Ohio-1490, ¶ 14. Trial counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *Strickland* at 688. To show prejudice, the appellant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

{¶ 55} We first address appellant's complaints regarding his trial counsel's lack of preparation. In his brief, appellant argues that his trial counsel was ineffective for failing to question any witnesses, and failing to fully investigate the time frame of the allegations. Appellant bases this argument on his contention that the "only real evidence" of sexual abuse in this case was the videotape of appellant having vaginal intercourse with A.P. in 2011 when

the victim was 17 years old. Appellant further maintains that "if [the attorney] had done his job there would have been only one charge. This charge would have been unlawful sexual conduct with a minor." However, based on our previous discussion, there was ample evidence to support appellant's conviction, including the victim's testimony and appellant's own admissions regarding the sexual abuse. Furthermore, the record plainly indicates that appellant's trial counsel did fully investigate this case and zealously represent appellant in this matter. Appellant's trial counsel called five witnesses on appellant's behalf and engaged each state witness in rigorous cross-examination. Indeed, appellant's trial counsel was successful in securing a not guilty charge on one count of rape. Accordingly, appellant's contentions are unfounded.

{¶ 56} Appellant next argues that his trial counsel was ineffective for failing to request a mistrial because Detective Mize was present in the courtroom throughout the proceedings. However, appellant's argument is meritless because Detective Mize was permitted to remain in the courtroom during the trial because he was the representative for the state. Evid.R. 615(B); e.*g., State v. Massie*, 6th Dist. Ottawa No. OT-04-007, 2005-Ohio-1678, ¶ 11 ("a law enforcement officer, may assist the prosecutor during trial and may remain in the courtroom when a separation of the witnesses is ordered").

{¶ 57} Next, appellant argues that his counsel was ineffective for failing to raise the issue of the "corpus delicti rule." Appellant's understanding of the corpus delicti rule is confused. The "corpus delicti" of a crime means the body or substance of the crime, and it consists of two elements: (1) the act, and (2) the criminal agency of the act. *State v. Maranda*, 94 Ohio St. 364 (1916), paragraph one of the syllabus. "It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the corpus delicti, before such confession is admissible." *Id.* at paragraph two of the syllabus.

{¶ 58} "The doctrine * * * was born out of great caution by the courts, in consideration of certain cases of homicide wherein it had turned out that by reason of the failure of the government to prove the death of the person charged as having been murdered it so happened that such person sometimes survived the person accused as his murderer." *State v. Morgan*, 12th Dist. Clermont No. CA2013-03-021, 2014-Ohio-250, ¶ 16, citing *Maranda* at 370. However, in light of the procedural safeguards granted to defendants in modern criminal practice, "the practicality of the rule has come into serious question." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 27. As a result, the Supreme Court has indicated that although the corpus delicti rule remains applicable, it need not be applied "with a dogmatic vengeance." *Morgan* at ¶ 16.

{¶ 59} The burden upon the state to provide some evidence of the corpus delicti is minimal. *State v. Sturgill*, 12th Dist. Clermont No. CA2004-02-008, 2004-Ohio-6481, ¶ 10. It is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged." *Id.* at ¶ 9.

{¶ 60} Based on our review, we find that appellant's argument with respect to the doctrine of corpus delicti is without merit and appellant's trial counsel was not deficient for failing to raise the issue at trial. As previously noted, the state presented ample evidence of appellant's guilt, including the victim's testimony, appellant's own admissions, and videotaped evidence of appellant engaging in sexual intercourse with A.P. Furthermore, it is well-established that "[t]he testimony of the victim as to the elements of a sexual assault, if believed, is recognized as sufficient to establish the essential elements of the offense." *State v. Ruhlman*, 12th Dist. Butler No. CA2005-05-125, 2006-Ohio-2137, ¶ 26; *State v. Laseur*, 12th Dist. Warren No. CA2002-10-117, 2003-Ohio-3874, ¶ 14. As such, appellant's corpus delicti argument is without merit and would have been meritless if raised by trial counsel. *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, ¶ 117 ("counsel is not deficient for

failing to raise a meritless issue").

{¶ 61} Finally, we note that appellant also argues that his trial counsel was ineffective based on his counsel's inexperience. In support, appellant alleges that his trial counsel had no prior experience in conducting a jury trial and therefore the case was a "dead bang winner for the prosecution." However, we find this argument is without merit for a number of reasons. First, appellant was appointed two attorneys to represent him in this matter, only one of which appellant claims lacked trial experience. Moreover, as this court has previously acknowledged "[a]ll licensed attorneys, even those practicing in an area of law for the first time, are presumed competent absent a showing of ineffectiveness." *State v. McConnell*, 12th Dist. Clermont No. CA95-06-036, 1995 WL 761440, *3 (Dec. 26, 1995). The burden of proving lack of competence is on the defendant. *Id*. In the present case, appellant did not introduce any evidence that his trial counsel was ineffective. Therefore, appellant's argument with respect to his trial counsel's inexperience is overruled.

{¶ 62} Based on our review of the entire record, we find that appellant did not receive ineffective assistance of counsel. Accordingly, appellant's second assignment of error is without merit and overruled.

{¶ 63} Assignment of Error No. 6:

{¶ 64} THE APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE PROSECUTOR ENGAGED IN MISCONDUCT AT TRIAL, WHICH MISCONDUCT SUBSTANTIALLY PREJUDICED APPELLAND AND MISLED THE JURY, THIS CREATED PROSECUTION MISCONDUCT [sic].

{¶ 65} In his sixth assignment of error, appellant alleges the state committed prosecutorial misconduct. We do not find any merit to appellant's argument.

{¶ 66} The state is entitled to a certain degree of latitude in making its concluding remarks. *State v. Layne*, 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 58. A

court will find prosecutorial misconduct only when the remarks made during closing were improper and those improper remarks prejudicially affected substantial rights of the defendant. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. "The focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon the culpability of the prosecutor." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, 56, citing *State v. Vanloan*, 12th Dist. Butler No. CA2008-10-259, 2009-Ohio-4461, ¶ 32. Therefore, a finding of prosecutorial misconduct will not be grounds for reversal unless the defendant has been denied a fair trial because of the prosecutor's prejudicial remarks. *Layne* at ¶ 60.

{¶ 67} Appellant first argues the prosecutor committed misconduct by improperly vouching for the credibility of the victim and by commenting on evidence not contained in the record. In support of this allegation, appellant raises a litany of general complaints and again reiterates his mistaken belief that the only evidence of any crime is the videotaped recording of him sexually abusing A.P. when she was 17 years old. Because appellant's counsel did not object to these statements at trial, our review of the record is limited to plain error. *State v. Vanloan*, 12th Dist. Butler No. CA2008-10-259, 2009-Ohio-4461, ¶ 33. Plain error exists where there is an obvious deviation from a legal rule that affected the outcome of the proceeding. Crim.R. 52(B); *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶ 68} Initially, we observe that the jury was instructed that the statements made during closing arguments were not evidence. We must therefore presume that the jury followed the trial court's instructions. *State v. Pence*, 12th Dist. Warren No. CA2012-05-045, 2013-Ohio-1388, ¶ 47.

{¶ 69} Appellant's first set of complaints are more general in nature and fail to specifically reference any objectionable statements other than vague assertions of misconduct. Having reviewed the prosecutor's closing argument, we find the prosecutor's

statements to be proper. In closing argument, a prosecutor may comment freely on "what the evidence has shown, and what reasonable inferences may be drawn therefrom." *Pence* at ¶ 50. "It is not improper to make comments in the context of explaining why a witness' testimony is or is not credible in light of the circumstances of the evidence, [where] the prosecutor neither implies knowledge of the facts outside the record nor places his or her personal credibility in issue by making such argument." *State v. Setty*, 12th Dist. Clermont No. CA2013-06-049, 2014-Ohio-2340, ¶ 52. Here, the prosecutor simply summarized the testimony that was offered by the state's witnesses during trial and asked the jury to determine whether such evidence was credible. The prosecutor did not improperly vouch for A.P. by implying knowledge of facts outside the record or placing her personal credibility at issue. Rather, the prosecutor's statements were limited to and directed at the evidence presented at trial, and how such evidence could be interpreted by the jury. Appellant's argument that the only credible evidence of sexual abuse is the videotaped recording of sexual abuse is simply incorrect and is a proposition that the jury ultimately disregarded as less than credible.

{¶ 70} Appellant next argues that there was prosecutorial misconduct in this case based on the prosecutor's alleged statements relating to the burden of proof in a criminal trial. In closing arguments, the state recited the evidence in favor of conviction and discussed all relevant factors in convicting appellant of the indicted offenses. In making her concluding remarks, the state attorney noted:

> At the beginning of this case, we talked extensively about the presumption of innocence. And I told you that the State would remove that presumption of innocence as it presented its evidence. At this point, the presumption is gone.

{¶ 71} Appellant's trial counsel later objected to this statement and alleged that the statement inappropriately stated that appellant was no longer presumed innocent. Following

appellant's objection, the trial court gave a cautionary instruction to the jury regarding the presumption of innocence and the burden of proof.

> THE COURT: Ladies and gentlemen of the jury, the Court wants to give you a couple of cautionary instructions. First one you may recall. I first mentioned, we talked about the burden of proof, and I told you that the burden of proof is on the State of Ohio. And that remains true, and I will give you final instructions in a few minutes, and I'll once again remind you that the State bears the burden of proving each and every element of each count of the indictment. The State or rather the defendant does not have a burden of proof.
>
> * * *
>
> I just want to caution you, ladies and gentlemen, not to lose sight of the fact that as far as the burden of proof to prove the elements of the offense, the State still bears the burden of proof. The defendant does not have a burden of proof to prove anything in this case, so I don't want the prosecutor's questions or the argument to create in your minds some confusion as to which side bears the burden of proof. Is that understood? And everyone is indicating yes for the record.
>
> Now apparently - - [the prosecutor] made a comment toward the end of her argument to the effect of the presumption is now gone, referring to the presumption of innocence. Well, the presumption remains until you ladies and gentlemen go back into the jury room and determine whether or not the State by the presentation of proof beyond a reasonable doubt has rebutted the presumption of innocence, whether that presumption has been overcome and now the State has proved the defendant's guilt.
>
> So I want to be clear that the presumption is not now gone. Only you can determine that following your deliberations in this case later on in the proceeding.
>
> Of another choice of words that she might have used in hindsight * * * I think what she probably tried to say and we discussed it here at the bench, she can correct me if I'm wrong is that the State, as far as the State is concerned, would argue that they've now rebutted that presumption of innocence. Does everyone understand? Fair enough.

{¶ 73} Based on our review, we find the prosecutor's statement did not deprive appellant of a fair trial. The statement merely reflected the state's argument that sufficient and substantial evidence was presented for the jury to appropriately return a guilty verdict.

- 21 -

Furthermore, any perceived error in this comment was surely cured by the cautionary instruction issued by the trial court, which re-emphasized, on multiple occasions, that the state had the burden of proof and appellant was entitled to a presumption of innocence until proven guilty. We presume that jurors follow the cautionary instructions given by the trial court. *State v. Olaniyan*, 6th Dist. Huron No. H-10-027, 2011-Ohio-3716, ¶ 11. Accordingly, we find no merit to appellant's argument that he received an unfair trial on the basis of prosecutorial misconduct. Accordingly, appellant's sixth assignment of error is overruled.

{¶ 74} Assignment of Error No. 7:

{¶ 75} THE CUMULATIVE DOCTRINE MUST BE PRESENTED IN THIS "CONGLOMERATION" OF THE DENILE OF THE TRUTH, WHICH CREATES A UNFAIRTRIAL AND A NONSUPPORTING CONVICTION OF ALL OF THE CHARGES IN THE INDICTMENT, AND THE OVER INDICTMENT THAT JUDGMENT MUST BE OF ACQUITTAL, THIS VIOLATION OF DUE PROCESS AND EQUAL PROTECTION OF THE LAW [sic].

{¶ 76} In his seventh assignment of error, appellant argues that he received an unfair trial based on the number of alleged errors during the course of the proceeding and therefore he is entitled to a new trial. We find appellant's argument to be meritless.

{¶ 77} According to the cumulative error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. McClurkin*, 12th Dist. Butler No. CA2007-03-071, 2010-Ohio-1938, ¶ 105, citing *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). However, because we have found that no errors occurred during appellant's trial, we find that appellant was not deprived of a fair trial, and the cumulative error doctrine is inapplicable.

{¶ 78} In addition, we note that appellant also raises a new issue on appeal with

regard to the validity of a search warrant that was executed on his residence following his arrest. "It is well-settled that issues not raised in the trial court may not be raised for the first time on appeal." *State v. Abney*, 12th Dist. Warren No. CA2004-02-018, 2005-Ohio-146, ¶ 17, citing *State v. Awan*, 22 Ohio St.3d 120, 122 (1986); *State v. Guzman-Martinez*, 12th Dist. Warren No. CA2010-06-059, 2011-Ohio-1310, ¶ 9. Therefore, because appellant did not specifically raise this issue with the trial court, this matter is waived and we need not consider it for the first time on appeal. Appellant's sixth assignment of error is overruled.

**{¶ 79}** Judgment affirmed.

PIPER and M. POWELL, JJ., concur.