[Cite as *State v. Wallace*, 2023-Ohio-1525.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-08-022 |
| | : | O P I N I O N |
| - vs - | | 5/8/2023 |
| | : | |
| JASON ALLEN WALLACE, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CRI 21-500-225


David A. Yost, Ohio Attorney General, and Sally Smetzer Montell and Kenneth H. Egbert, Jr., Assistant Attorneys General, for appellee.

The Law Office of John D. Hill, LLC, and John D. Hill, Jr., for appellant.



**HENDRICKSON, P.J.**

{¶ 1}   Appellant, Jason Allen Wallace, appeals from his convictions in the Clinton County Court of Common Pleas for the illegal open burning of solid waste.  For the reasons set forth below, we affirm his convictions.

**I. FACTS & PROCEDURAL HISTORY**

{¶ 2}   On October 8, 2021, Wallace was indicted on three counts of the illegal open

burning of solid waste in violation of R.C. 3734.03, unclassified felonies, and three counts of illegally causing air pollution in violation of R.C. 3734.05(G), unclassified misdemeanors. The charges stemmed from allegations that on three different occasions, September 30, 2020, February 15, 2021, and May 6, 2021, Wallace recklessly disposed of solid waste, including cardboard, garbage bags, plastic bottles, empty food and drink containers, nylon bags, hairbrushes, tire rims, metal framing, aerosol cans, carpet, and processed wood, by burning it on properties located in Washington Township, Clinton County, Ohio. The open burning of these materials caused air pollution.

{¶ 3} Wallace pled not guilty to the charges and a jury trial commenced on July 7, 2022. At trial, the state presented testimony from various law enforcement officers and firefighters who had investigated or responded to fires set on Wallace's properties in Clinton County, Ohio. Pictures of Wallace's properties and the fires that had been set on September 30, 2020, February 15, 2021, and May 6, 2021 were admitted into evidence. Wallace did not call any witnesses or move to admit any exhibits as evidence and his Crim.R. 29 motion was denied by the trial court. From the testimony and exhibits admitted at trial, the following facts were established.

**A. Incident #1 – September 30, 2020 Fire**

{¶ 4} On September 30, 2020, Lieutenant Brant Schmitt with the Wilmington Fire Department was dispatched to Wallace's property on State Route 350 in Clinton County on reports of an active fire. Upon arriving at the scene, Lt. Schmitt observed foul smelling dark smoke and went to investigate. Lt. Schmitt encountered and spoke with Wallace, who stated he was trying to "clean some stuff up" by burning "just natural wood." However, when Lt. Schmitt looked at the fire, he observed that it contained much more than natural wood. Lt. Schmitt saw processed wood, plywood, a hairbrush, plastics, a nylon mesh bag, drywall, springs, and a wheel rim covered in soot in the fire. Lt. Schmitt instructed Wallace to put

out the fire and Wallace complied.

## B. Incident #2 – February 15, 2021 Fire

{¶ 5}   On February 15, 2021, Clinton County Sheriff's Deputy Thomas Couch was dispatched to Wallace's property on Cuba Road in Clinton County, Ohio on a report of illegal burning.   Deputy Couch had received a complaint from Randy Ohlemacher, a special investigator with the Ohio Environmental Protection Agency.   Investigator Ohlemacher, along with Ohio Bureau of Criminal Investigation Special Agent Jon Scale, had been investigating Wallace's property after receiving numerous reports from neighbors of the burning of solid waste on the property.   Investigator Ohlemacher and Special Agent Scale had been to Wallace's Cuba Road property a couple of times and found that it contained numerous piles of garbage, rubbish, old boats, and a utility trailer.   Investigator Ohlemacher and Agent Scale set up trail cameras to record Wallace's property, hoping they would capture who was entering and exiting the property and who was doing the burning.   When the trail cameras detected movement, an alert was sent to Investigator Ohlemacher's phone.

{¶ 6}   Investigator Ohlemacher received alerts on February 15, 2021.   The trail cameras showed two pickup trucks coming and going from Wallace's Cuba Road property with their truck beds loaded with various items, including tires, plastics, and trash bags. Investigator Ohlemacher continued to observe the property through the trail cameras.   Later that evening, he saw that a fire had been started on the property.   He contacted the local sheriff's office with a request that they respond to the fire.

{¶ 7}   Deputy Crouch arrived at the property shortly after 11:00 p.m.   He found a trailer on fire and asked Wallace, who was on scene, about it.   Wallace stated that his truck had gotten stuck in the snow on the property and that he had started the fire to keep warm. However, Deputy Couch did not believe Wallace's explanation stating, "It didn't make much

sense * * * where the fire was compared to where the trucks were." Deputy Couch observed that there was solid waste items in the trailer-fire Wallace had started, such as household garbage items, pop cans, food cans, and rubber. Deputy Couch instructed Wallace to put the fire out before leaving the scene.

### C. Incident #3 – May 6, 2021 Fire

{¶ 8} Around 2:20 a.m. on May 6, 2021, the Wilmington Fire Department was dispatched to Wallace's Cuba Road property on reports of a fire. Firefighters found a fire that had been burning for a long time. The fire contained items such as a tire, a tarp, aerosol cans, carpet, an older TV, and cardboard. Fire Lieutenant Richard Birt spoke with Wallace, who was on scene. Wallace told Lt. Birt that he had gotten a phone call about a fire on the property and had driven out to the property to put it out. Lt. Birt, however, did not see any evidence or indication that Wallace had attempted to put out the fire before the fire department's arrival. Later that day, around 12:30 p.m., Investigator Ohlemacher went to the Cuba Road property to examine the burn site and take photographs of the fire.

### D. Verdict & Sentence

{¶ 9} After considering the testimony and evidence introduced at trial, the jury found Wallace guilty of two counts of the illegal open burning of solid waste and two counts of causing air pollution, relating to the September 30, 2020 and the February 15, 2021 incidents, but not guilty of the charges relating to the May 6, 2021 incident. At sentencing, the trial court determined that the air pollution convictions merged with the illegal open burning of solid waste convictions. The state elected to proceed on the open burning of solid waste convictions, and Wallace was sentenced to concurrent two-year prison terms for each offense. The sentence was run concurrently with a 12-month sentence imposed in Clinton Common Pleas Case No. CRI 21-500-104.

### II. ANALYSIS

- 4 -

{¶ 10} Wallace timely appealed his convictions, raising two assignments of error for review. As the assignments of error are related, we address them together.

{¶ 11} Assignment of Error No. 1:

{¶ 12} [WALLACE'S] CONVICTIONS FOR ILLEGAL OPEN BURNING OF SOLID WASTE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} Assignment of Error No. 2:

{¶ 14} [WALLACE'S] CONVICTIONS FOR ILLEGAL OPEN BURNING OF SOLID WASTE WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 15} Wallace contends his convictions for the illegal open burning of solid waste are not supported by sufficient evidence and are against the manifest weight of the evidence because the state failed to prove that he started the fires that occurred on September 30, 2020 and February 15, 2021, or that he "disposed" or placed any "illicit materials" into the fires. Wallace contends his convictions were merely premised upon his "relative proximity to the two fires in question." Wallace does not challenge his convictions for illegally causing air pollution.

{¶ 16} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 17} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id*., citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 18} Wallace was convicted of the illegal open burning of solid waste in violation of R.C. 3734.03, which provides that "[n]o person shall dispose of solid wastes by open burning or open dumping, except as authorized by the director of environmental protection in rules adopted in accordance with division (V) of section 3734.01, section 3734.02, or sections 37.4.70 to 37.4.73 of the Revised Code[.]" The requisite mental state for a violation

of R.C. 3734.03 is "recklessly." *See* R.C. 3734.99(A); *State v. Neville*, 7th Dist. Noble No. 235, 1998 Ohio App. LEXIS 5519, *20 (Nov. 17, 1998). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶ 19} "Disposal" is defined as "the discharge, deposit, injection, dumping, spilling, leaking, emitting, or placing of any solid wastes or hazardous waste into or on any land or ground or surface water or into the air," with certain exceptions not relevant here. R.C. 3734.01(F). Solid wastes are "unwanted residual solid or semisolid materials" that include, but are not limited to "garbage, scrap tires, combustible and noncombustible material, street dirt, and debris." R.C. 3734.01(E). Open burning is "the burning of solid wastes in an open area or burning of solid wastes in a type of chamber or vessel that is not approved or authorized in rules adopted by the director under section 3734.02 of the Revised Code or, if the solid wastes consist of scrap tires, in rules adopted under division (V) of this section or section 3734.73 of the Revised Code[.]" R.C. 3734.01(H).

{¶ 20} After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find that Wallace's convictions for the Illegal open burning of solid waste are supported by sufficient evidence and are not against the manifest weight of the evidence. The state presented testimony and evidence from which the jury could have found all the essential elements of the offenses proven beyond a reasonable doubt. Regarding the September 30, 2020 fire, Lt. Schmitt testified that Wallace was disposing of items by burning them on his property on State Route 350 in Clinton County, Ohio. Wallace admitted to starting the fire in an effort to "clean stuff up." Lt. Schmitt observed that Wallace was burning processed wood, plywood, a hairbrush, plastics, a nylon mesh bag, drywall, springs, and a wheel rim—all unwanted residual solid materials constituting solid waste.

The items being burnt were plainly visible in the photographs taken of the September 30, 2020 fire.

{¶ 21} As for the February 15, 2021 incident, Investigator Ohlemacher testified that through his trail camera footage, he watched two pickup trucks come onto Wallace's property to unload various items from their truck beds. Thereafter, a fire was started on the property. When Deputy Couch responded to the scene, he found a trailer had been lit on fire and unwanted residual solid materials, such as household garbage, pop cans, food cans, and rubber, were burning in the fire. Deputy Couch spoke with Wallace, who admitted he started the fire, allegedly as a means of staying warm after his truck got stuck in the snow. Deputy Couch explained that Wallace's story did not make much sense, given "where the fire was compared to where the trucks were."

{¶ 22} Despite the testimony and photographic evidence admitted at trial, Wallace contends his convictions should be reversed because no witness actually saw him start the fire or put solid wastes into the fire. However, direct evidence is not required. "[A] defendant may be convicted solely on the basis of circumstantial evidence." *State v. Nicely*, 39 Ohio St.3d 147, 151 (1988). "Circumstantial evidence is proof of certain facts and circumstances in a given case, from which the jury may infer other, connected facts, which usually and reasonably follow according to the common experience of mankind." *State v. Stringer*, 12th Dist. Butler No. CA2012-04-095, 2013-Ohio-988, ¶ 31. Circumstantial evidence inherently possesses the same probative value as direct evidence, and a conviction based on circumstantial evidence is no less sound than one based on direct evidence. *State v. Brown*, 12th Dist. Butler No. CA2014-12-257, 2015-Ohio-3407, ¶ 12. Here, it was reasonable for the jurors to infer that Wallace was responsible for burning all the items in the fires he started, including the solid wastes.

{¶ 23} Wallace also seeks to challenge Lt. Schmitt's and Deputy Couch's testimony

that he admitted to starting the September 30, 2020 and February 15, 2021 fires. In his brief, Wallace states his position is that "he never told [Lt. Schmitt or Deputy Couch] any such thing" when they responded to the fires. However, he acknowledges that "he unfortunately did not take the stand to testify to this." An appellate court cannot consider facts that are not in the record. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 70; *State v. Shaibi*, 12th Dist. Warren No. CA2020-07-038, 2021-Ohio-1352, ¶ 32, fn. 4 ("This court cannot and will not assume facts not in the record"). Lt. Schmitt's and Deputy Couch's testimony about Wallace's admissions to starting the fires went unchallenged at trial, and it was reasonable for the jury to consider this evidence in finding Wallace guilty of the illegal open burning of solid waste.

## III. CONCLUSION

{¶ 24} As Wallace was found at each of the crime scenes where open burning of solid wastes was actively taking place and he admitted to starting the fires, we find that Wallace's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. The jury did not clearly lose its way and create such a manifest miscarriage of justice that Wallace's convictions must be reversed and a new trial ordered. Wallace's first and second assignments of error are overruled.

{¶ 25} Judgment affirmed.

PIPER and BYRNE, JJ., concur.