[Cite as *State v. Pacific*, 2023-Ohio-4779.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-02-018 |
| | : | O P I N I O N |
| - vs - | | 12/28/2023 |
| | : | |
| CHRISTOPHER LEE PACIFIC, | : | |
| Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 22CR39899

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

The Helbling Law Firm, LLC, and John J. Helbling, for appellant.

**HENDRICKSON, P.J.**

{¶ 1}  Christopher Lee ("Appellant") appeals his convictions in the Warren County Court of Common Pleas for failure to comply with an order or signal of a police officer, driving under suspension, and obstructing official business.

**Factual Background**

{¶ 2}  On October 28, 2022 at around 3:30 a.m., Franklin Police Officer Keil ("Officer

Keil") was on duty when he stopped at a red light in the far-right lane of a street within the city of Franklin. He then noticed a silver Ford Fusion in the far-left hand turn lane, and it appeared its rear license plate was not illuminated. He further observed a white male in the driver seat wearing a toboggan cap and a sweatshirt with a camouflage design as well as a female in the front passenger seat. Officer Keil was not able to identify either individual. The Ford turned left while he turned right. He then looked in his rearview mirror and confirmed the Ford's license plate light was not on.

{¶ 3} At that point, Officer Keil made a U-turn and proceeded toward the Ford. After catching up, he was able to read its license plate as being "DTW 9452" and conveyed this to dispatch. After activating his overhead lights, Officer Keil turned on his cruiser's siren for several quick bursts to attempt to initiate a stop. However, when the Ford continued to accelerate, he flipped on the siren, notified dispatch that the Ford was failing to comply, and began to pursue the vehicle.

{¶ 4} During the ensuing pursuit, Officer Keil observed the Ford pass another vehicle by crossing over the double yellow lines at speeds between 65 and 70 miles per hour. The Ford then continued to accelerate to between 80 and 100 miles per hour through bends in the road. The Ford proceeded to disobey several traffic signals while continuing to speed at times in excess of 100 miles per hour. Officer Keil eventually lost sight of the vehicle and stopped his pursuit around 3:53 a.m. However, he was notified by dispatch that the address associated with the license plate of the Ford was 105 Cole Avenue, Miamisburg, Ohio, and that Miamisburg Police were heading to the address. Officer Keil and another Franklin police officer who had joined the pursuit proceeded to the address.

{¶ 5} Deputy Sheriff Billmaier ("Deputy Billmaier") with the Warren County K-9 Unit was also on patrol that night. After hearing the police chase over the radio, he also drove to 105 Cole Avenue. Upon arriving near the address, Deputy Billmaier noticed a Ford he

believed matched the description of the vehicle involved in the chase. He then saw an individual shut the Ford's driver side door and start walking towards him and 105 Cole Avenue. When the individual was within ten feet of him, Deputy Billmaier exited his vehicle and told the individual to stop. At that point, the individual turned and ran in between 105 Cole Avenue and a neighboring house. Notably, 105 Cole Avenue is part of a duplex with 912 Park Avenue. Deputy Billmaier did not pursue the individual because his radio was malfunctioning which prevented him from notifying other officers of a pursuit. As he retreated to his vehicle, Miamisburg police arrived at the scene and saw the individual run into the back of the duplex. Shortly thereafter, Officer Keil also arrived at the duplex.

{¶ 6} Miamisburg officers made contact with a woman, later determined to be Appellant's mother, and she consented to a search of the residence at 912 Park Avenue. Initially, the officers made a perimeter around the residence, opened the rear door to the home, and held Deputy Billmaier's canine partner at the door. After making several commands for anyone inside to come out, Miamisburg police decided to search the residence themselves and not use canine assistance.

{¶ 7} No one was found in the lower level of the residence, but the officers observed scattered items in the laundry area and footprints on top of one of the appliances. Directly above the appliances was an attic entrance. Miamisburg officers entered the attic and apprehended Appellant, who was wearing a sweatshirt with a camo design and a black toboggan cap. The keys to the Ford were not found and it was determined that Appellant's license was suspended.

**Procedural Posture**

{¶ 8} Appellant was charged with four crimes: (1) Failure to Comply with an Order or Signal of a Police Officer; (2) Driving Under Suspension; (3) Obstructing Official Business; and (4) Illegal Use or Possession of Drug Paraphernalia. The drug-related

charge and the facts surrounding it are not at issue on this appeal.

{¶ 9}  At trial, Officer Keil identified the individual apprehended on October 28, 2022 as Appellant and noted that the Ford vehicle parked on Cole Avenue that day had the same license plate number as the vehicle he pursued.  Deputy Billmaier verified at trial that Appellant was the individual who shut the driver's side door to the Ford and ran from him. Appellant moved for acquittal at trial, but it was denied by the court.  The jury found Appellant guilty on all counts except the drug-related charge.  The trial court sentenced Appellant to 30 months, six months, and 90 days for each charge respectively and ran all sentences concurrently.  Appellant's driver's license was suspended for life.

{¶ 10} First Assignment of Error:

**THE JURY ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY FINDING HIM GUILTY OF COUNTS I, II, AND III WITHOUT SUFFICIENT EVIDENCE**

{¶ 11} Second Assignment of Error:

**THE JURY ERRED TO THE PREJUDICE OF DEFNDANT-APPELLANT BY FINDING HIM GUILTY OF COUNTS I, II, AND III AGAINST THE WEIGHT OF THE EVIDENCE**

{¶ 12} Third Assignment of Error:

**THE TRIAL JUDGE ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY DENYING HIS MOTIONS FOR ACQUITTAL UNDER OHIO RULE OF CRIMINAL PROCEDURE 29**

{¶ 13} Appellant raises three assignments of error which will all be addressed together.  On appeal, Appellant argues there was no evidence presented at trial which "unequivocally identif[ied]" him as the driver of the Ford on October 22, 2022.  Police found no keys to the Ford and no testimony tied him directly to the driver of the car except the testimony of Officer Keil, which Appellant believes was "manufactured to fit the description" of the clothing he was found wearing in the attic.  Appellant also argues that the state failed

to establish that he was hiding in the attic or purposely trying to prevent, obstruct or delay the investigation of police. As a result, Appellant reasons that the evidence presented at trial was insufficient, that his conviction was against the manifest weight of the evidence, and that the trial judge erred by denying his motion for acquittal under Crim.R. 29. Appellant does not challenge the fact that his license was suspended at the time of the incident.

{¶ 14} When reviewing the sufficiency of the evidence presented at trial, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Essentially, "the test for sufficiency focuses on whether the state met its burden of production at trial * * *." *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 10.

{¶ 15} However, a manifest weight of the evidence determination must examine "the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* (6th Ed.1990). Stated differently, during this examination, appellate courts "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice" that a new trial must be ordered. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168.

{¶ 16} Importantly, while the appellate courts will inspect the entire record, they must keep in mind that because testimony and evidence were presented directly to a judge or jury, the trier of fact was in the best position to evaluate witness credibility, weigh the evidence, and render a verdict and judgment. *Eastley v. Volkman*, 132 Ohio St.3d 328,

2012-Ohio-2179, ¶ 21; *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14-15.  Thus, a conviction will be overturned only where there has been "a manifest miscarriage of justice" and the evidence "weighs heavily in favor of acquittal."  *Thompkins*, 78 Ohio St.3d 380 at 387.

{¶ 17} Under Ohio Crim.R. 29, the court, upon motion, "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Notably, "[a]n appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the-evidence claim."  *State v. Smith*, 12th Dist. Clermont No. CA2021-02-009, 2022-Ohio-1984, ¶ 55.

{¶ 18} As a result of the foregoing, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency" as well as whether denial of a Crim.R. 29 motion was appropriate.  *Id*. at ¶ 55, 58, citing *State v. Reeder*, 12th Dist. Clinton Nos. CA2020-09-012 and CA2020-09-013, 2021-Ohio-2988, ¶ 31.

{¶ 19} Turning to the relevant charges on appeal, R.C. 2921.331 (failure to comply with order or signal of police officer) states, "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."  In turn, R.C. 4510.11 (driving under suspension or in violation of license restriction) prohibits individuals with suspended licenses from driving a motor vehicle.  Finally, R.C. 2921.31(A) (obstructing official business) prohibits anyone from purposely "prevent[ing], obstruct[ing], or delay[ing] the performance by a public official of any authorized act within the public official's official capacity * * *."  Purposely is defined as a "specific intention to cause a certain result, or, when * * * it is the offender's specific intention to engage in conduct of [a prohibited] nature."

R.C. 2901.22(A).

{¶ 20} Here, the state's case against Appellant was based on circumstantial evidence. "Circumstantial evidence is proof of certain facts and circumstances in a given case, from which the jury may infer other, connected facts, which usually and reasonably follow according to the common experience of mankind." *State v. Stringer*, 12th Dist. Butler No. CA2012-04-095, 2013-Ohio-988, ¶ 31. Importantly, "[c]ircumstantial evidence inherently possesses the same probative value as direct evidence, and a conviction based on circumstantial evidence is no less sound than one based on direct evidence." *State v. Wallace*, 12th Dist. Clinton No. CA2022-08-022, 2023-Ohio-1525, ¶ 22. As a result, "circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Heinish*, 50 Ohio St.3d 231, 238 (1990); *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 75, quoting *Heinish*.

{¶ 21} There is no dispute that Officer Keil was led on a dangerous high speed chase, and the circumstantial evidence presented at trial overwhelmingly demonstrated that Appellant was the driver of the Ford on October 28, 2022: (1) Appellant was apprehended wearing the same clothes Officer Keil had observed the driver of the Ford wearing; (2) upon arriving at the duplex registered to the license plate of the Ford vehicle involved in the chase, Deputy Billmaier observed the Ford parked on the street and an individual closing its driver side door; (3) after Deputy Billmaier stepped out of his vehicle and attempted to question this individual, the person ran; (4) upon search of the duplex, the man who ran from Deputy Billmaier was found in the attic above the wash room and identified as Appellant.

{¶ 22} Given these pieces of evidence, it was reasonable for the jury to infer that Appellant was the driver of the Ford on October 28, 2022, drove back to his residence, ran

away from Deputy Billmaier upon being approached because Appellant was just involved in a high-speed chase, and climbed on top of a laundry room appliance to gain access to the attic entrance and hide from police.

{¶ 23} The fact that the keys to the Ford were never discovered does not detract from this line of reasoning or make it impossible for Appellant to have led police on a high-speed chase. In addition, while Appellant argues that Officer Keil's testimony matching Appellant's clothing to that of the driver was "manufactured," we note that Appellant does nothing to challenge Officer Keil's credibility other than point out that this testimony was useful to further illustrate that Appellant was the driver of the Ford. With nothing else, the trier of fact was clearly still at liberty to find Officer Keil's testimony credible.

{¶ 24} While it is true that none of the evidence derived from the series of events described above, standing alone, "unequivocally identifies" Appellant as the driver of the Ford, the strong circumstantial evidence, taken as a whole, leads to an inexorable conclusion; Appellant, with a suspended license, willfully eluded police after receiving a signal to stop and sought to obstruct the police by engaging in a high-speed pursuit as well as purposely hiding from police in the attic of his home. The jury did not lose its way in this case, but instead followed a logical path created by the evidence presented at trial.

{¶ 25} The assignments of error are overruled.

{¶ 26} Judgment affirmed.

PIPER and BYRNE, JJ., concur.