[Cite as *State v. Marshall*, 2024-Ohio-4445.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-10-079 |
| | : | O P I N I O N |
| - vs - | | 9/9/2024 |
| | : | |
| RODNEY JAMES MARSHALL, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 22CR40051

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

The Helbling Law Firm, LLC, and John J. Helbling, for appellant.

**PIPER, J.**

{¶ 1} Appellant, Rodney Marshall, timely appeals his convictions in the Warren County Court of Common Pleas for one count of failure to comply, one count of receiving stolen property, one count of obstructing official business, and three counts of criminal damaging. Appellant's convictions were determined following a two-day jury trial. The trial court sentenced appellant to a total aggregate prison term of four-and-one-half years.

**FACTUAL BACKGROUND**

{¶ 2} On December 9, 2022, a red Cadillac CTS was reported stolen from a residence in Dayton, Ohio. Later that same day, police officers were dispatched to a location in Franklin, Ohio, on a report of a suspicious male attempting to break into vehicles. As officers responded, the dispatcher advised that the male suspect was leaving the scene in a red sedan. The red sedan ("the vehicle") was later confirmed to be the stolen red Cadillac CTS.

{¶ 3} Sergeant Jesse Shannon spotted the vehicle and activated his lights and sirens. A high-speed chase ensued. Officer Patrick Holland and Officer Shelby Davis also joined in the pursuit. Throughout the chase, the driver of the vehicle drove into oncoming traffic, banked up curbs, and sped dangerously past pedestrians. The chase continued through the yards of multiple residences. The driver of the vehicle eventually reached a dead-end and was blocked in by patrol cars and a barbed-wire fence. The driver exited the vehicle and hopped the fence leading to a wooded area. There was a female passenger in the passenger's seat who remained in the vehicle.

{¶ 4} Sergeant Shannon and Officer Holland had a clear view of the driver and observed that he was wearing a white shirt with a dark jacket. Officer Holland called out on his radio that the suspect was a "white male, black jacket, running through the woods." Sergeant Shannon and Officer Holland continued the chase on foot although they briefly lost sight of the suspect.

{¶ 5} Officer Davis had anticipated where the chase was headed and stationed her cruiser in a subdivision on the other side of the woods. About a minute after Officer Holland called out his description of the driver, Officer Davis saw appellant emerge from the woods. Officer Davis identified herself as a police officer and ordered appellant to stop running. Appellant refused. Appellant only stopped running when Officer Davis drew

her taser and ordered him to the ground. Despite the circumstances, appellant told Officer Davis that he was just "out jogging in the area for a run."

{¶ 6} When Sergeant Shannon and Officer Holland emerged from the woods, they confirmed that appellant was the suspect they had been chasing. Appellant was wearing the same clothing that he had on when he exited the vehicle except he had removed the dark jacket. The dark jacket was actually a hooded sweatshirt and was located on the ground near where appellant was apprehended.

{¶ 7} Thereafter, appellant was taken to the hospital. The passenger in the vehicle was identified as a woman named McKenzie Hazell. An ensuing search of the vehicle revealed the presence of a large quantity of methamphetamine located on the floorboard near the driver's side door.

## INDICTMENT AND JURY TRIAL

{¶ 8} Appellant was indicted for failure to comply with an order or signal of a police officer, receiving stolen property, aggravated possession of drugs, obstructing official business, and criminal damaging. Appellant pled not guilty, and the matter proceeded to a jury trial.

{¶ 9} The trial commenced on May 25, 2023. The state presented the testimony of the vehicle owner who testified about her stolen vehicle, including how the vehicle had been damaged and deemed a total loss by her insurer. The state also presented testimony from Sergeant Shannon, Officer Holland, and Officer Davis. Sergeant Shannon and Officer Holland testified about the high-speed chase and identified appellant as the driver of the vehicle. Officer Davis testified about appellant emerging from the woods about a minute after Officer Holland called out the driver's description. The state also presented video evidence from Sergeant Shannon's cruiser cam and body camera. Since he raises the issue in this appeal, we note that neither the state nor appellant perceived

the need to call McKenzie (the passenger) to testify.

{¶ 10} Following the close of the state's case-in-chief, appellant moved for a Crim.R. 29 acquittal, which the trial court denied. Appellant did not present any evidence on his behalf. Appellant's argument in closing was that the state failed to prove identity. Appellant's counsel maintained that the state failed to adequately investigate the case and that McKenzie, as the passenger, was the best person to ask who was driving the vehicle. Attacking the state's burden of proof, appellant's counsel extensively criticized the state's failure to call her as a witness, emphasizing it several times.

{¶ 11} As relevant to this appeal, during deliberations, the jury had difficulty playing a video exhibit. As a result, the trial court had the bailiff provide the jury with a different computer to play the exhibit. There was concern that the computer could be used to access the internet, so the trial court had the bailiff remain in the deliberation room with noise canceling headphones while the exhibit played.

{¶ 12} The jury later announced that it had reached a verdict. The jury found appellant guilty on all counts except the drug charge.

### POST-TRIAL MOTION AND SENTENCING

{¶ 13} On June 7, 2023, appellant filed a pro se motion for a new trial.[1] He claimed that he should receive a new trial because of "abnormal occurrences" during trial. For instance, appellant argued that he should be entitled to a new trial because the bailiff had gone into the jury deliberation room to assist with the technical problem. Appellant also argued that other evidence could have exonerated him.

{¶ 14} Appellant was appointed new counsel to argue his motion. On September

---

1. Appellant also filed a supplemental motion for a new trial in which he also argued that he should be "discharged."

22, 2023, the trial court held a hearing on appellant's motion for a new trial. During the hearing, the trial court heard testimony from all 12 jurors. The jurors testified that the bailiff was only present for purposes of fixing the technical issue they were having. The bailiff did not discuss the facts of the case, or any other matter involving the jury instructions or law. The jurors unanimously agreed that the bailiff had no influence on their deliberations.

{¶ 15} Appellant called the passenger, McKenzie, to the stand. McKenzie testified that appellant was not the driver of the vehicle. She claimed the driver was a man by the name of "P.J. or C.J. something with a J in it." McKenzie could not remember many other details because she said she was on drugs and had only met the man one other time. McKenzie said she was issued a subpoena and appeared at the courthouse on the day of trial but was never called to testify. McKenzie claimed that she later sent a text message to appellant's trial counsel wondering why she had not been called to testify.[2]

{¶ 16} When cross-examined by the state, McKenzie testified that she has known appellant for five or six years, dated him on and off for four years, and has two children with him. McKenzie said that appellant does not pay her child support but acknowledged that she receives some measure of financial support from him that he cannot provide while in prison.

{¶ 17} The trial court denied appellant's motion for a new trial. The trial court concluded there had been no improper communication with the jury and that the presence of the bailiff had no impact on their deliberations or the verdict. The trial court likewise found that appellant did not receive ineffective assistance of counsel for not calling McKenzie as a witness. The trial court found that McKenzie was not credible and that

---

2. A copy of the purported text message was introduced in evidence.

appellant's decision not to call her as a witness was a reasonable trial strategy.

{¶ 18} On October 2, 2023, the trial court sentenced appellant to a total aggregate prison term of four-and-one-half years.[3]  Appellant timely appealed, raising five assignments of error for review.

**APPEAL**

{¶ 19} Assignment of Error No. 1:

{¶ 20} THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANT-APPELLANT'S MOTION FOR NEW TRIAL UNDER OHIO CRIM.R. 33(A) DUE TO COMMUNICATION WITH JURORS BY BAILIFF AND ANOTHER UNKNOWN PERSON.

{¶ 21} Appellant's first assignment of error states that the bailiff and an unknown "second person" had improper communication with the jury during its deliberations. Appellant made this argument in his motion for a new trial solely in respect to the bailiff, which the trial court denied following a lengthy hearing.  Appellant now asserts that the trial court's decision amounted to plain error because it did not consider or investigate whether an unknown "second person" was also in the room.[4]

{¶ 22} Crim. R. 33(A) provides a list of grounds for which a trial court may grant a motion for a new trial.[5]  However, "Crim.R. 33 motions for a new trial are not to be granted lightly." *State v. Spradlin*, 2017-Ohio-876, ¶ 9 (12th Dist.).  The decision to grant or deny a motion for a new trial pursuant to Crim.R. 33 rests within the sound discretion of the trial

---

3. Appellant was sentenced to 36 months in prison for failure to comply with an order or signal of a police officer, 18 months in prison for receiving stolen property, 12 months in prison for obstructing official business, and 90 days in jail for each of the criminal damaging counts.  The trial court ran each of the sentences concurrent, except for the failure to comply, which the trial court ordered to run consecutively to the sentences on the other counts.

4. We note the trial court's time and effort in permitting appellant to explore his motion for a new trial was considerable and thorough.  We also note it was appellant's burden to produce evidence supporting his motion. *State v. DiPietro*, 2009-Ohio-5854, ¶ 19 (10th Dist.).

5. Appellant does not specifically identify which of the Crim. R. 33(A) grounds support his motion for a new trial.  He generally states there was an "irregularity in the proceeding" that was a "surprise" to him.

court and will not be reversed absent an abuse of discretion. *State v. Litton*, 2016-Ohio-7913, ¶ 17 (12th Dist.). An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *State v. Hancock*, 2006-Ohio-160, ¶ 130.

**{¶ 23}** Appellant argues that R.C. 2945.33 was violated, a statute governing the keeping and conduct of a jury after a case is submitted to them. That statute states, in pertinent part:

> When a cause is finally submitted the jurors must be kept together in a convenient place under the charge of an officer until they agree upon a verdict, or are discharged by the court. The court . . . may permit the jurors to separate during the adjournment of court overnight, under proper cautions, or under supervision of an officer. *Such officer shall not permit a communication to be made to them, nor make any himself except to ask if they have agreed upon a verdict, unless he does so by order of the court.* Such officer shall not communicate to any person, before the verdict is delivered, any matter in relation to their deliberation.

R.C. 2945.33 (Emphasis added).

**{¶ 24}** Appellant initially argued R.C. 2945.33 was violated because the bailiff was in the jury room during deliberations. The trial court held a hearing on the motion where the 12 jurors and the bailiff testified. Based upon the testimony, the trial court found:

> Based on the testimony of the jurors and the bailiff, the Court finds that there was a technical issue with the playing of the video that was entered as an exhibit at the trial which prompted the jury to contact the bailiff. These technical issues could not be resolved with the equipment currently being used. The bailiff was directed by the Court, as a result of the technical issues, to provide the jury with a second computer in the jury room. Because this computer had internet access, the bailiff remained in the jury room with earbuds while the jury was deliberating. This matter was brought to the attention of the parties prior to the reading of the jury verdict.
>
> The bailiff had no communication with any juror about the facts of the case, the law, the instructions provided by the Court, or the deliberation process. The presence of the bailiff

had no impact on the jury deliberations and no influence on the verdict.

{¶ 25} On appeal, appellant abandons his argument with respect to the bailiff entering the jury deliberation room. He now claims the trial court failed to address the presence of an unknown "second person" in the jury deliberation room, claiming "the contact of the second individual is presumptively prejudicial as well as plain error. The Court should have granted a new trial considering this impingement upon the jury and it was an abuse of discretion to fail to do so."

{¶ 26} Upon review of the record, we find there was no error in the proceedings below and appellant was not entitled to a new trial. As an initial matter, appellant's argument with respect to an unknown "second person" was not raised below. It is well settled that issues not raised in the trial court may not be raised for the first time on appeal. *State v. Vunda*, 2014-Ohio-3449, ¶ 78 (12th Dist.). We therefore need not consider it for the first time on appeal. *Id.*

{¶ 27} However, even if properly raised, appellant's argument would still be without merit. The record reflects that the trial court ordered the bailiff to enter the jury deliberation room with a new computer to fix a technical issue. The record shows that the bailiff did just that. The testimony was undisputed that the bailiff had no improper communications with the jury and all 12 jurors testified that the bailiff had no impact on their deliberations. However, appellant's argument seizes on a minor discrepancy with respect to the memory recall of a few jurors. As relevant here, a few jurors believed that a second person might have entered the deliberation room to assist the bailiff with the technical issue. However, this was not a universal memory. The majority of jurors recalled that the bailiff was the only person present in the jury deliberation room while some jurors thought "potentially" someone else had helped too.

**{¶ 28}** Despite appellant's arguments to the contrary, appellant did not establish that a second person was even in the room. The testimony of the varied jurors more confirms that human memory is fallible. Some jurors remembered certain details about the trial—held four months earlier—a little differently than others. We are not required to assume or speculate that an unknown "second person" was present. This is even more true here because appellant could have raised this specific argument below. Appellant heard some jurors recall that maybe a second person helped with the technical issue. However, he chose not to raise that issue during his argument to the bench, i.e., the court with the discretion to rule on his Crim.R. 33 motion for a new trial. *Litton*, 2016-Ohio-7913 at ¶ 17. Instead, he waited until this appeal where he broadly asserts that "the contact of the second individual is presumptively prejudicial." However, we disagree with appellant's arguments to the contrary. As we have held in prior cases, in the absence of any evidence indicating impermissible, substantive communication with the jury, we decline to find misconduct or presume prejudice warranting a new trial. *State v. Robinson*, 2007-Ohio-354, ¶ 41 (12th Dist.). This court has fully considered the facts and circumstances of this case and determine the trial court did not abuse its discretion in denying appellant's Crim.R. 33 motion for a new trial.[6] Appellant's first assignment of error is overruled.

**{¶ 29}** Assignment of Error No. 2:

**{¶ 30}** DEFENDANT-APPELLANT WAS PREVENTED FROM HAVING A FAIR TRIAL BY INEFFECTIVE ASSISTANCE OF COUNSEL IN THAT TRIAL COUNSEL FAILED TO CALL MCKENZIE DAWN HAZELL AS A WITNESS AND THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT-APPELLANT'S MOTION FOR

---

6. While there was no outside evidence of extraneous prejudicial information or influence brought to the jury's attention, we note the state did not argue the *aliunde* rule found in Evid. R. 606(B) in regard to the jurors testifying post-verdict. *State v. Hassler*, 90 Ohio St.3d 108, 123 (2000); *State v. Brakeall*, 2009-Ohio-3542, ¶ 14 (12th Dist.). *See also Mammone v. Jenkins*, 49 F.4th 1026, 1045 (6th Cir. 2022).

NEW TRIAL BASED ON DEFENSE COUNSEL'S FAILURE TO CALL HAZELL AS A WITNESS.

{¶ 31} Appellant's second assignment of error argues that he received ineffective assistance of counsel. Appellant argues his trial counsel should have called the passenger, appellant's girlfriend McKenzie, as a witness at trial. Appellant alleges that if McKenzie had testified, she would have told the jurors that appellant was not driving the vehicle, but rather that someone named "C.J. or P.J." had been driving.

{¶ 32} To prevail on an ineffective assistance of counsel claim, an appellant must establish: (1) that his trial counsel's performance was deficient; and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *State v. Vore*, 2013-Ohio-1490, ¶ 14 (12th Dist.). Trial counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *Vunda*, 2014-Ohio-3449 at ¶ 54. To show prejudice, the appellant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* An appellant's failure to satisfy either prong of the analysis negates a court's need to consider the other. *State v. Clarke*, 2016-Ohio-7187, ¶ 49 (12th Dist.).

{¶ 33} It is well established that trial tactics and strategies do not constitute a denial of effective assistance of counsel. *State v. Hoop*, 2005-Ohio-1407, ¶ 20 (12th Dist.). The decision whether to call a witness during trial falls squarely within the realm of trial tactics. *State v. Smith*, 2017-Ohio-7540, ¶ 42 (12th Dist.).

{¶ 34} In the present case, appellant's counsel chose to employ a trial strategy alleging the state failed to prove its case beyond a reasonable doubt. Trial counsel offered pointed criticism that the state failed to introduce any testimony from the passenger. Trial counsel argued that appellant was being railroaded by the system and

was merely in the wrong place at the wrong time.

{¶ 35} Based on our review, we find there is no reason to second-guess trial counsel's strategic decision to not call McKenzie as a witness. Though McKenzie might have testified that appellant was not the driver of the vehicle, she is simply not a credible witness. It is highly unlikely any juror would have been swayed by her testimony that the driver was actually a man by the name of "C.J. or P.J. something with a J in it." Further, McKenzie would have been cross-examined by the state where the jury would have learned that she had a strong motivation to lie, as she was in a romantic relationship with appellant, had children with him, and received some financial support from him. It was reasonable that trial counsel chose to employ the trial strategy he pursued rather than call a witness who was not credible and had a motivation to lie.

{¶ 36} In addition, we note appellant also failed to show there was a reasonable probability there would have been a different verdict if McKenzie had testified. As will be discussed below, there was substantial direct and circumstantial evidence that appellant was the driver of the vehicle. Meanwhile, "C.J. or P.J." was nowhere to be found. Appellant did not receive ineffective assistance of counsel, nor was he entitled to a new trial on that basis. Appellant's second assignment of error is overruled.

{¶ 37} Assignment of Error No. 3:

{¶ 38} THE JURY ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY FINDING HIM GUILTY OF COUNTS I, III, IV, V, VI, AND VII WITHOUT SUFFICIENT EVIDENCE.

{¶ 39} Assignment of Error No. 4:

{¶ 40} THE JURY ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY FINDING HIM GUILTY OF COUNTS I, III, IV, V, VI, AND VII AGAINST THE WEIGHT OF THE EVIDENCE.

**{¶ 41}** Assignment of Error No. 5:

**{¶ 42}** THE TRIAL JUDGE ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY DENYING HIS MOTIONS FOR ACQUITTAL UNDER OHIO RULE OF CRIMINAL PROCEDURE 29.

**{¶ 43}** Appellant's third, fourth, and fifth assignments of error will be addressed together. Appellant argues the evidence presented during trial did not establish that he was the driver of the vehicle.[7] As a result, appellant reasons that the evidence presented at trial was insufficient, that his conviction was against the manifest weight of the evidence, and that the trial court erred by denying his motion for acquittal under Crim.R. 29.[8]

**{¶ 44}** Under Ohio Crim.R. 29, the court, upon motion, "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Notably, "[a]n appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the-evidence claim." *State v. Smith*, 2022-Ohio-1984, ¶ 55 (12th Dist.).

**{¶ 45}** When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is

---

7. Appellant presents his argument in a somewhat confusing manner. For instance, he references the mens rea requirement for each offense, but his arguments challenge the more basic requirement that the state failed to prove the identity of the driver. *See State v. Pacific*, 2023-Ohio-4779, ¶ 13 (12th Dist.). He does not present specific challenges to the required mental state or any other element of the offense outside of his argument that he was not the driver of the vehicle.

8. We also note appellant mentions in his brief something about his "presence in the attic," which is a factual detail that does not appear to be related to the instant case.

- 12 -

whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**{¶ 46}** A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.).

**{¶ 47}** In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 2021-Ohio-466, ¶ 15 (12th Dist.). A determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency. *State v. Reeder*, 2021-Ohio-2988, ¶ 31 (12th Dist.).

**{¶ 48}** It is well settled that to warrant a conviction, the evidence must establish beyond a reasonable doubt the identity of the accused as the person who committed the crime at issue. *State v. Hibbard*, 2023-Ohio-983, ¶ 20 (12th Dist.). The identity of the accused as the perpetrator of the crime may be established by direct or circumstantial evidence. *Id.* Circumstantial and direct evidence have the same probative value. *State*

*v. Lee*, 2021-Ohio-2544, ¶ 25 (12th Dist.).

{¶ 49} Following review, we find appellant's convictions are supported by the manifest weight of the evidence.[9] Appellant argues that none of the officers saw who was driving the vehicle during the pursuit. However, both Sergeant Shannon and Officer Holland separately and independently identified appellant as the person who exited the vehicle through the driver's door when the vehicle came to a stop. Both officers pulled right behind appellant as he stopped the car and jumped out.

{¶ 50} Sergeant Shannon testified that he observed appellant exit the driver's side of the vehicle. Appellant was wearing a white undershirt under a dark colored jacket when he jumped the fence. Sergeant Sharon testified that there was no doubt in his mind that appellant was the driver whom he saw exit the vehicle. Officer Holland testified that appellant "came out of the driver's seat and then jumped the fence and ran through the woods." Officer Holland stated that he observed appellant's side profile and that he followed him into the woods, identifying him over the radio as a "white male, black jacket, running through the woods."

{¶ 51} There was a brief period of time when both Sergeant Shannon and Officer Holland lost sight of appellant in the woods. However, about a minute after Officer Holland called out his description of the suspect, Officer Davis reported seeing appellant running out of the woods. As such, there was a reasonable and permissible inference that the person who ran into the woods was the same person Officer Davis saw running out of the woods. Furthermore, appellant was wearing the same clothing he had on when he fled from his vehicle, minus the dark hooded sweatshirt, which was found nearby. Despite claiming he was just out for a jog, appellant first tried to evade Officer Davis and

---

9. We are not listing the elements for each offense because appellant's challenge goes only to identity.

only complied when she drew her taser and ordered him to the ground.

{¶ 52} On appeal, appellant challenges the testimony of Sergeant Shannon, Officer Holland, and Officer Davis. He maintains that they did not see him driving the vehicle during the chase and insists their testimonies were misguided or incorrect. He also accuses them of lying. However, while appellant argues differently, it is well established that it is the trier of fact who makes determinations of credibility and the weight to be given to the evidence presented at trial. *State v. Martino*, 2018-Ohio-2882, ¶ 13 (12th Dist.). It is equally well established that a conviction is not against the manifest weight of the evidence merely because the trier of fact believed the testimony of the state's witnesses. *Id.* The jury is free to believe or disbelieve the testimony of any witness at trial. *State v. Keller*, 2019-Ohio-1397, ¶ 15 (12th Dist.).

{¶ 53} Considering the foregoing, we find that the evidence presented at trial does not weigh heavily in favor of acquittal and that the jury did not clearly lose its way and create a manifest miscarriage of justice. Appellant's convictions are therefore supported by sufficient evidence and are not against the manifest weight of the evidence. Appellant's third, fourth, and fifth assignments of error are overruled.

{¶ 54} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.