[Cite as *State v. Bowling*, 2024-Ohio-6060.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-10-078 |
| - vs - | : | O P I N I O N<br>12/30/2024 |
| | : | |
| WALTER TERRY BOWLING, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 23CR40179

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Anne Harvey Law LLC, and Anne Harvey, for appellant.

**HENDRICKSON, P.J.**

{¶ 1} Appellant, Walter Terry Bowling, appeals from his convictions in the Warren County Court of Common Pleas for aggravated possession of drugs and domestic violence. For the reasons discussed below, we affirm his convictions.

{¶ 2} On March 13, 2023, Bowling was indicted on two counts of aggravated possession of drugs in violation of R.C. 2925.11(A), felonies of the fifth degree, one count

of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree, and one count of aggravated menacing in violation of R.C. 2903.21(A), a misdemeanor of the first degree. The charges arose following an altercation Bowling had with his daughter, Rebecca Slusher, on October 24, 2022 in their shared rental home. Slusher discovered Bowling in possession of drugs, namely methamphetamine and psilocyn. When she attempted to flush the drugs in the bathroom, Bowling grabbed her, twisted her arm, and began to strike her. He later threatened to shoot her when she tried to exit the bathroom with the drugs.

{¶ 3} Bowling pled not guilty to the charges. He waived his right to a jury trial and a bench trial commenced on August 23, 2023. Slusher and Officer Greg Stallard from the city of Lebanon Police Department testified on behalf of the state. Slusher testified that in 2022, she had been caring for Bowling after a series of unfortunate events. Bowling had been in an ATV accident and suffered multiple broken bones. He was later bitten by a dog and required surgery to repair the damage. Finally, he had to have knee replacement surgery. Slusher initially cared for Bowling by traveling to Bowling's home in Kentucky. However, after Bowling's Kentucky home burnt down in a fire, Bowling moved to Ohio with Slusher. In August 2022, Slusher leased a condo in Lebanon, Warren County, Ohio where she, her two children, and Bowling all resided. Bowling gave Slusher financial power of attorney over his affairs, and the two shared a bank account where insurance proceeds from the burnt down Kentucky home were deposited.

{¶ 4} In October 2022, Bowling started getting agitated and argumentative with Slusher. On October 24, 2022, he was especially agitated because he wanted his boarded dog moved from his daughter Mary's home to a friend's home. When Slusher advised Bowling that the dog could not be moved in the timeframe Bowling desired, Slusher described Bowling as becoming "extremely argumentative," "really aggressive,"

and "just not acting like a normal person."

{¶ 5} Between 11:00 p.m. on October 24, 2022 and 1:00 a.m. on October 25, 2022, Bowling was in the downstairs of Slusher's rental home yelling. Frustrated by the noise Bowling was making, Slusher went downstairs to confront him. Bowling's bedroom door was open and Slusher saw Bowling standing near the head of the bed, rolling what she believed to be a marijuana cigarette. Slusher saw other drugs lying on the bed and a handgun sitting on Bowling's nightstand. Slusher grabbed the drugs Bowling had on his bed and told him, "[W]e're not having this stuff in the house." Slusher observed that the drugs looked like "some sort of dried mushrooms" and "marijuana . . . like liquid marijuana." Slusher took the drugs to the bathroom next to Bowling's bedroom. As she did, she noticed that Bowling had more drugs in an open safe in his bedroom.

{¶ 6} Bowling followed Slusher into the bathroom. As Slusher tried to flush the drugs down the toilet, Bowling attempted to grab the drugs away from Slusher. A struggle ensued. Slusher called 9-1-1, stating that there were guns in Bowling's room and "all kinds of drugs" and asking for an officer to respond immediately. At that point, because Bowling knew the police were on the way to the home, Bowling's efforts went from trying to save the drugs to trying to flush the drugs. In his attempt to get the drugs, Bowling grabbed Slusher's arm and twisted it. Slusher testified that while she was on the phone with 9-1-1, she was bent over trying to shield the drugs from Bowling when he got on her back and started hitting her with a closed fist. The 9-1-1 phone call was admitted into evidence, and on the call Slusher can be heard shouting for Bowling to "get off of [her]."

{¶ 7} Slusher took the drugs from the bathroom and went towards the front door of the home. Bowling told her that she "wouldn't make it to the front door" because "he would shoot [her]." Slusher opened the front door of the home, threw the drugs outside on the driveway, and then went back into the house to wake up her son and get him out

of the house. Slusher then waited for law enforcement to arrive.

{¶ 8} Three city of Lebanon police officers responded to her home, including Officer Stallard. Slusher gave a statement to the officers about what had transpired with Bowling. Slusher denied needing medical attention but noted that her arm was red and swollen from Bowling grabbing it. She also indicated that "it hurt" when Bowling had grabbed her and when he had hit her.

{¶ 9} On cross-examination, Slusher admitted that after the altercation with Bowling occurred, she transferred money from the account she shared with Bowling into her personal bank account. Slusher testified that she transferred the funds to pay for personal property that she and her children had lost when Bowling's Kentucky home burnt down, to pay for milage expenses, and to pay for nursing services she had been performing for Bowling. According to Slusher, she had a contract with Bowling that she was to be paid for those items, though she did not produce that contract at trial. Slusher also claimed that Bowling had been texting her "all day" on October 24, 2022 to harass and threaten her into moving his dog. However, those text messages were never provided to the state or introduced at trial.

{¶ 10} Officer Stallard testified that he was dispatched to Slusher's home on a report of a domestic violence dispute. Upon arriving at the residence, he encountered Slusher, who was waiting for law enforcement on the home's porch. Officer Stallard described Slusher as "upset," "emotional," and "distraught." Slusher advised the officer that her arm was "kind of sore," and the officer "observe[d] what appeared to be a fairly fresh injury" to her arm. The officer noted that Slusher's arm "looked like it was a little bit swollen" and "[t]here was some redness as well." He testified that it "looked like kind of a pressure – almost like a pressure injury or possibly like a squeeze or pull potentially."

{¶ 11} Officer Stallard recovered the drugs that Slusher had thrown outside on the

driveway. Subsequent testing of the drugs revealed that the mushroom-like substance was 20.72 grams of psilocybin and the other substance was 1.38 grams of methamphetamine.

{¶ 12} Officer Stallard and the other officers on scene spoke with Bowling about the drugs and the incident with Slusher. Though Bowling admitted to having an argument with Slusher, he did not admit to any kind of physical altercation. He also did not admit that the drugs found on the driveway were his. He did, however, admit that if he were drug tested, he would "test dirty for weed." Bowling allowed Officer Stallard to look through his text messages with Slusher and the officer did not find any threatening texts exchanged between the two. Bowling was placed under arrest. While in route to the jail, Bowling made statements to Officer Stallard indicating that he believed Slusher was trying to get him out of the house and take his money.

{¶ 13} Following the state's presentation of its case-in-chief, Bowling moved for acquittal pursuant to Crim.R. 29. The trial court denied the motion and Bowling called his daughter Lisa Von Stein as his only witness. Von Stein testified that she had visited with Bowling for nearly an hour on October 24, 2022. She indicated Bowling was still recovering from his knee surgery and had a drain on his knee. She testified Bowling had been walking with the assistance of a walker. She also testified that at the time Bowling's Kentucky home burnt down, Slusher was not living with Bowling at the home and did not have any personal belongings in the home. On cross-examination, Von Stein admitted that she and Slusher were not on "good terms" and had not been on "good terms" since October 23, 2022.

{¶ 14} After considering the foregoing testimony, the trial court found Bowling not guilty of aggravated menacing but guilty of the two aggravated possession of drugs offenses and the domestic violence offense. In reaching this verdict, the court stated, in

relevant part, the following:

> THE COURT: Here's where I'm at with this. You know, I agree with [the prosecutor] that probably some of the most credible evidence that a Court will ever see or consider is a 9-1-1 tape that captures what happened in the moment. I also agree with [defense counsel]. I think he called this a terrible family dynamic and a convoluted mess. That seems to sum up the case right there in its essence.
>
> But, there are a couple of things that I know to be true, Mr. Bowling. And, the first thing that I know to be true is that the State of Ohio has proven that you are guilty of the aggravated possession of drugs charges. It does not make sense to me that Ms. Slusher would make all of this up in order to get your money. That just doesn't make sense to me. I also find that you are guilty of the domestic violence because I do think that they have met all the elements of the charge involving the family member and you causing or attempting to cause physical harm. The aggravated menacing, I got a little bit lost in the testimony on it, and I think I have some issues about that. So, I am going to find you not guilty of the aggravated menacing.

{¶ 15} On September 21, 2023, the trial court sentenced Bowling to three years of community control. Bowling was ordered to complete drug and alcohol treatment and to have no contact with Slusher.

{¶ 16} Bowling initially appealed his conviction in October 2023. This court dismissed his appeal for failure to comply with App.R. 12(A)(2) and 16(A)(7). *See State v. Bowling*, 2024-Ohio-1638 (12th Dist.). Bowling subsequently filed a request to re-open his appeal, and this court granted his motion. *See State v. Bowling*, 12th Dist. Warren CA2023-10-078 (June 21, 2024) (Entry Construing Letter as Application to Reopen Appeal, Granting Application and Appointing Counsel). Bowling now raises the following two assignments of error.

{¶ 17} Assignment of Error No. 1:

{¶ 18} MR. BOWLING'S CONVICTION FOR AGGRAVATED POSSESSION OF DRUGS IS AGAINST BOTH THE MANIFEST WEIGHT AND THE SUFFICIENCY OF

THE EVIDENCE PRESENTED AT TRIAL

{¶ 19} Assignment of Error No. 2:

{¶ 20} MR. BOWLING'S CONVICTION FOR DOMESTIC VIOLENCE IS AGAINST BOTH THE MANIFEST WEIGHT AND THE SUFFICIENCY OF EVIDENCE PRESENTED AT TRIAL.

{¶ 21} Bowling argues on appeal that his convictions for aggravated possession of drugs and domestic violence are not supported by sufficient evidence and are against the manifest weight of the evidence.

{¶ 22} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 23} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire trial record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created

such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.). "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 2011-Ohio-5226, ¶ 81 (12th Dist.), quoting *State v. Walker*, 2007-Ohio-911, ¶ 26 (12th Dist.). An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest injustice when the evidence presented at trial weighs heavily in favor of acquittal. *Id*., citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 2013-Ohio-150, ¶ 19 (12th Dist.).

**Aggravated Possession of Drugs**

{¶ 24} Bowling was convicted of two counts of aggravated possession of drugs in violation of R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." A person acts knowingly when, regardless of purpose, "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 25} To "possess" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Lee*, 2021-Ohio-2544, ¶ 21 (12th Dist.). "Constructive possession exists when one is conscious of the presence of the

object and able to exercise dominion and control over it, even if it is not within one's immediate physical possession." *Id.*, citing *State v. Graves*, 2015-Ohio-3936, ¶ 22 (12th Dist.). "Constructive possession may be proven by circumstantial evidence alone." *State v. Fultz*, 2016-Ohio-1486, ¶ 12 (12th Dist.). "Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had constructive possession." *Id.* "The discovery of readily accessible drugs in close proximity to the accused constitutes circumstantial evidence that the accused was in constructive possession of the drugs." *Id.* at ¶ 13.

{¶ 26} Bowling argues that the state failed to prove both the knowledge and possession elements. He contends that the evidence at trial indicates he "experienced a mental breakdown" and therefore "his behavior does not meet the definition of knowing." He further contends that the state failed to show he actually or constructively possessed the drugs as there was no evidence that his fingerprints were found on the bag holding the drugs and the drugs had been placed outside by Slusher.

{¶ 27} After reviewing the record, we find that Bowling's convictions for aggravated possession of drugs were supported by sufficient evidence and were not against the manifest weight of the evidence. The state presented testimony establishing all the essential elements of aggravated possession of drugs beyond a reasonable doubt, including the disputed "knowledge" and "possession" elements. Slusher testified she found drugs sitting on Bowling's bed—the "dried mushrooms" which testing revealed to be 20.72 grams of psilocybin and what she believed was "liquid marijuana" but testing revealed to be 1.38 grams of methamphetamine. Bowling was aware of the drugs and was able to exercise dominion and control over them. When Slusher attempted to remove the drugs from Bowling's possession, first by flushing the drugs and then by throwing the

drugs outside the home, Bowling got into a physical altercation with Slusher and fought to retain his possession of the drugs. Contrary to Bowling's claim, fingerprint evidence tying him to the drugs recovered from the driveway was not necessary. Slusher's testimony, as believed by the trier of fact, established that Bowling possessed psilocybin and methamphetamine. Further, Bowling's actions in trying to keep possession of the drugs also demonstrates that he acted "knowingly" in his possession of the drugs.

{¶ 28} Bowling claims he was in a "deranged mental state," and suffering from a mental breakdown such that his behavior does not meet the definition of knowing. We disagree. Not only did his actions demonstrate that he sought to knowingly retain possession of his drugs, but his conduct when the officers arrived on scene indicated he was aware of what was occurring. Bowling's statements to the officers were grounded in reality. He had sufficient mental awareness to admit to certain actions, like having an argument with Slusher and to "test[ing] dirty for weed," and to deny other, more consequential actions, like engaging in a physical altercation with Slusher and claiming ownership over the drugs found in the driveway. Bowling's mental state did not prevent him from knowingly possessing psilocybin and methamphetamine.

{¶ 29} Finally, Bowling argues Slusher's testimony was not credible as she was financially motivated to get him out of her home to lie about the events that occurred on October 24, 2022. He contends the trial court lost its way when it decided to believe Slusher's testimony. However, "the trial court, as the trier of fact, is best able to view witnesses and observe their demeanor, gestures, and voice inflictions in weighing witness credibility . . . ." *State v. Burkhead*, 2009-Ohio-4466, ¶ 19 (12th Dist.). The trier of fact "considers any inconsistencies in the witnesses' testimony and resolves them accordingly, believing all, part, or none of each witnesses' testimony." *State v. Singh*, 2022-Ohio-3385, ¶ 67 (12th Dist.). "A conviction is not against the manifest weight of the

evidence merely because the trier of fact believed the testimony of the state's witnesses." *State v. Marshall*, 2024-Ohio-4445, ¶ 52 (12th Dist.).  Here, the trial court considered "the terrible family dynamic" and "convoluted mess" the state and defense witnesses testified about.  The court assessed the witnesses' credibility and considered the 9-1-1 recording. In doing so, the court found Slusher's testimony credible, stating that "[i]t does not make sense . . . that Ms. Slusher would make all of this up in order to get [Bowling's] money."

{¶ 30}  Based on the evidence presented at trial, the trier of fact was entitled to find that Bowling knowingly possessed the controlled substances psilocybin and methamphetamine.  Bowling's convictions for aggravated possession of drugs were not against the manifest weight of the evidence and were supported by sufficient evidence. Bowling's first assignment of error is, therefore, overruled.

**Domestic Violence**

{¶ 31} Bowling was also convicted of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."  A "family or household member" includes a "child of the offender" who is residing with the offender.  R.C. 2919.25(F)(1)(a)(ii).  "Physical harm" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration."  R.C. 2901.01(A)(3).

{¶ 32} Bowling argues the state failed to present evidence that he knowingly caused or attempted to cause harm to Slusher.  Referencing his acquittal on the aggravated menacing charge, Bowling argues that it "simply makes no sense that the trial judge could disbelieve . . . part of [Slusher's] testimony [relating to the gun threat] but then rely upon the remaining portions of the 9-1-1 tape as proof beyond a reasonable doubt of the other elements of domestic violence."

{¶ 33} As we noted above, a trier of fact is entitled to believe "all, part, or none of

- 11 -

each witnesses' testimony." *Singh*, 2022-Ohio-3385 at ¶ 67. Slusher's testimony, as believed by the trier of fact, was evidence establishing beyond a reasonable doubt that Bowling knowingly caused physical harm to his daughter when he grabbed her, twisted her arm, and struck her after she removed the drugs from his bedroom and attempted to flush the drugs. Slusher indicated that as she was bent over, trying to shield the drugs from Bowling, he got on her back and started hitting her with a closed fist. Slusher's testimony was corroborated by the 9-1-1 recording, on which a distraught Slusher can be heard shouting for Bowling to "get off of [her]." Slusher's testimony that Bowling caused her physical pain and harm to her arm was also corroborated by Officer Stallard's visual inspection of Slusher's arm. He testified that he observed "what appeared to be a fairly fresh injury" to Slusher's arm. He indicated the arm was red, "a little bit swollen," and "looked like kind of a pressure – almost like a pressure injury or possibly like a squeeze or pull potentially."

{¶ 34} In finding Bowling guilty of domestic violence, the trial court was entitled to reject Bowling's defense that he was physically incapable of assaulting his daughter in the manner she described due to his health problems and recent surgeries. Slusher testified that Bowling had been walking around without a walker at the time of the incident. Officer Stallard had observed that Bowling was able to walk on his own. The court was entitled to credit Slusher's and Officer Stallard's testimony regarding Bowling's physical abilities.

{¶ 35} Finally, contrary to Bowling's assertions, the fact that the trial court found that the state had not met its burden of proving aggravated menacing beyond a reasonable doubt has no bearing on the court's guilty finding for the domestic violence offense. "Each count in an indictment charges a distinct offense and is independent of all other counts." *State v. Davis*, 2011-Ohio-2207, ¶ 37 (12th Dist.). A trier of fact's finding

- 12 -

on one count is independent of its findings on another count. Here, the trial court found that the state "met all the elements" of the charge of domestic violence and the record supports the trial court's finding, beyond a reasonable doubt, that Bowling committed the offense against Slusher when he grabbed her, twisted her arm, and struck her in the bathroom of their shared home. Bowling's conviction for domestic violence was not against the manifest weight of the evidence and was supported by sufficient evidence. Bowling's second assignment of error is, therefore, overruled.

{¶ 36} Judgment affirmed.

PIPER and M. POWELL, JJ, concur.